**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FILED by _GRE_ D.C.
INTAKE

OCT 0 2 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

**09 - 22978**

Pure Nature Organics, LLC,

Case No.: 09-_____ CIV-_____

    Plaintiff,

Magistrate Judge _____

  v.

SunOpta Global Organic Ingredients, Inc., and
Joseph J. Stern,

**NOTICE OF REMOVAL**

    Defendants.

CIV - GOLD

/ McALILEY

---

Pursuant to 28 U.S.C. § 1441 *et seq.*, Defendants hereby notice removal of this civil action from the Eleventh Judicial Circuit Court of Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida.  This Court has removal jurisdiction because this is a civil action "of which the district courts have original jurisdiction" and an action "founded on a claim or right arising under . . . the laws of the United States."  28 U.S.C. § 1441(a)-(b).  In particular, a federal question exists because the Complaint asserts two claims under the Lanham Act, both under 15 U.S.C. § 1114 and 15 U.S.C. § 1125.

In further support of this Notice, Defendants state:

1.    Pure Nature Organics, LLC ("Pure Nature" or "Plaintiff") filed a civil action titled *Pure Nature Organics, LLC v. SunOpta Global Organic Ingredients, Inc., et al.*, Case No. 0964948CA3 (the "Florida State Action"), in the Eleventh Judicial Circuit Court of Miami-Dade County, Florida.

2.    Defendants SunOpta Global Organic Ingredients, Inc., and Joseph J. Stern were served with the Complaint in the Florida State Action on or about September 12, 2009.

3.     Pursuant to 28 U.S.C. § 1446(a), attached hereto as Exhibit A is a true and correct copy of all substantive records and proceedings from the Florida State Action.

4.     Pursuant to 28 U.S.C. § 1446(d), Defendants are filing a copy of this Notice of Removal with the Clerk of the Eleventh Judicial Circuit Court of Miami-Dade County, Florida, and will serve Plaintiff with this Notice promptly after its filing.

This Court Has Federal Question Jurisdiction Over the Florida State Action.

5.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because multiple claims set forth in the Florida State Action arise under the laws of the United States. Specifically, the Complaint in the Florida State Action asserts a claim for alleged counterfeiting under 15 U.S.C. § 1114 and another claim for unfair competition under 15 U.S.C. § 1125. The Florida State Action is therefore removable to this Court under 28 U.S.C. 1441(b).

6.     This Court also has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, which are removable as well under 28 U.S.C. § 1441(c).

7.     No Defendant waives any defense to the Complaint in the Florida State Action, including, but not limited to lack of service, improper service, lack of personal jurisdiction, and *forum non conveniens*.

Removal Is Timely and Agreed to by All Defendants.

8.     The Complaint was not served on or known to any Defendant before September 12, 2009. This Notice of Removal was therefore filed within thirty days of receipt of a copy of the initial pleading, as required by 28 U.S.C. § 1446(b).

9.     All Defendants join in the removal of the action to this Court.

WHEREFORE, Defendants notice the removal of this case to the United States District

Court for the Southern District of Florida pursuant to 28 U.S.C. § 1441 *et seq.*

Respectfully Submitted,

Dated:  September 2, 2009

D. Smith FC   FBN 057435
Edward R. Nicklaus, Florida Bar No. 138399
*Email: edwardn@nicklauslaw.com*
Nicholas F. Van Valen, Florida Bar No. 0006701
*Email: nicholasv@nicklauslaw.com*
NICKLAUS & ASSOCIATES, P.A.
4651 Ponce de Leon Boulevard, Suite 200
Miami, Coral Gables, FL  33146
Telephone: 305-460-9888
Facsimile:  305-460-9889

**STOEL RIVES LLP**
Eric A. Bartsch (MN # 243723) (of counsel)
Marc A. Al (MN # 247923) (of counsel)
33 South Sixth Street, Suite 4200
Minneapolis, MN  55402
Telephone: 612-373-8800
Facsimile:  612-373-8881
eabartsch@stoel.com
maal@stoel.com

Matthew D. Thayne (UT # 9424) (of counsel)
One Utah Center
201 S. Main St, Suite 1100
Salt Lake City, UT  84111-4904
Telephone: (801) 578-6924
Facsimile:  (801) 578-6999
mdthayne@stoel.com

**ATTORNEYS FOR SUNOPTA GLOBAL
ORGANIC INGREDIENTS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___2___ day of October 2009, I caused a true and correct copy of the foregoing NOTICE OF REMOVAL to be served by facsimile & U.S. Mail, on the following: Ian J. Kukoff, Esq., Blaxberg, Grayson & Kukoff, P.A., *Attorneys for Pure Nature Organics, LLC*, 25 S.E. 2nd Avenue, Suite 730, Miami, Florida 33131.

**NICKLAUS & ASSOCIATES, P.A.**
*Attorneys for Defendants*
4651 Ponce de Leon Blvd., Suite 200
Coral Gables, Florida 33146
Telephone: 305-460-9888
Facsimile: 305-460-9889
edwardn@nicklauslaw.com

By:_____  FB.N 657438
      EDWARD R. NICKLAUS
      Florida Bar No.: 138399

-4-

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

PURE NATURE ORGANICS, LLC.
a Florida Limited Liability Company,

GENERAL JURISDICTION DIVISION

**09** 6 4 9 4 8 **CA 3**

    Plaintiff,                    CASE NO. _____

vs.

SUNOPTA GLOBAL ORGANIC
INGREDIENTS, INC. a California
corporation, and JOSEPH J. STERN,
individually,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Pure Nature Organics, LLC, through undersigned counsel, sues the Defendant SunOpta Global Organic Ingredients, Inc. ("SunOpta") and Joseph J. Stern ("Stern") individually, and alleges:

### JURISDICTION AND VENUE

1.    This is an action exceeding $15,000.00 exclusive of interest, costs and attorney's fees.

2.    Plaintiff is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

3.    Defendant, SunOpta, is a California corporation with its principal place of business in Aptos, California, and which conducts substantial business in Miami-Dade County, Florida.

4.    Defendant, Stern, is a resident of the State of California, is the president and Chief Executive Officer of SunOpta, and is the conscious, dominant and active force behind the

1



EXHIBIT
A

wrongful acts of SunOpta, which Stern committed for the benefit of SunOpta and for his own personal benefit and gain. This Court has personal jurisdiction over Stern in that through SunOpta, he does substantial business in Florida and in this judicial district.

5.      Venue is proper in Miami-Dade County, Florida in that the subject Licensing Agreement was entered into in Miami-Dade County, Florida, SunOpta by and through Stern, does substantial business in Miami-Dade County, Florida, the causes of action alleged herein accrued in Miami-Dade County, Florida and the parties' Licensing Agreement provides for venue of any dispute in Miami-Dade County, Florida.

<b><u>GENERAL ALLEGATIONS AS TO ALL COUNTS</u></b>

6.      Pure Nature is the owner of U.S Trademark Registration No. 2971821 (the "U.S. Trademark") for the name "Pure Nature Organic Fruits & Vegetables" and the following mark:



7.      The U.S. Trademark, a copy of which is attached as Exhibit "A," was issued on July 18, 2005, and is valid and subsisting.

8.      The U.S. Trademark is registered for uses associated with organically grown, frozen fruits and vegetables, namely green beans, broccoli, corn, carrots, peas, spinach, strawberries, blueberries, blackberries, raspberries and apricots.

9.      From 2004 though 2007, Pure Nature spent over $1.3 million in marketing, advertising and promotion of the "*Pure Nature*" name and as a result, Pure Nature has established a national and international reputation among fruit and vegetable wholesalers and

retailers as a producer and supplier of the finest organic frozen fruits and vegetables sold under or in connection with the trademark set forth above.

10.    On or about August 4, 2008, Pure Nature and SunOpta entered into a Trademark Licensing Agreement, attached hereto as Exhibit "B," pursuant to which Pure Nature granted SunOpta limited use of the U.S. Trademark. The Agreement provides in pertinent part:

### Preliminary Statements:

A.    Licensor owns and uses the name and/or trademark "Pure Nature ORGANICS" (the "Mark") in connection with its business of selling frozen organic vegetables and fruits;

B.    Licensee similar to Licensor, is in the business of selling frozen organic vegetables and fruits (the "Business");

C.    The Licensee desires to use the Mark in connection with its Business, and the Licensor desires to license the Marks to the Licensee pursuant to the terms and conditions of this Agreement.

### Agreement:

NOW THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1.    **License of Mark.**    Subject to the terms and conditions of this Agreement, the Licensor hereby grants to the Licensee, and Licensee hereby accepts, an exclusive license to use the Mark in an appropriate and tasteful manner, as determined in Licensee's sole discretion (i) solely in connection with the marketing and operation of the Business, and (ii) solely during the term of this Agreement, subject to the provisions of Section 6.

2.    **Rights Reserved; Limited Rights to Licensee.** Licensor reserves all rights with respect to the Mark not expressly licensed to Licensee hereunder. Licensee agrees that it will not utilize the Mark in any manner whatsoever other than in connection with the marketing and operation of the Business.

3.    **License Fee.**  Licensee shall pay a royalty to Licensor of $100 on the Effective Date.

3

11.     Payment of the Licensing Fee was due on the Effective Date, and was a condition precedent to the validity and effectiveness of the Licensing Agreement.

12.     Further, pursuant to Section 1 of the Agreement, the use of the U.S. Trademark was licensed solely in connection with the marketing and operation of the "Business." The Business is defined in the Licensing Agreement as "the selling of frozen organic vegetables and fruits."

13.     Paragraph 2 of the Licensing Agreement explicitly reserves unto Pure Nature all rights with respect to the mark not expressly licensed to the licensee, and SunOpta agreed that it would not utilize the mark "in any other manner whatsoever other than in the marketing and operation of the Business," again defined as the sale of frozen organic vegetables and fruit.

14.     SunOpta did not pay the Licensing Fee as required by the Licensing Agreement until February 2009, over six months after the Licensing Fee was required to be paid. As such, the Licensing Agreement never became effective.

15.     Alternatively, to the extent that the Licensing Agreement did become effective, Defendants have been using the U.S. Trademark in conjunction with the marketing and sale of fresh squeezed pasteurized orange juice to Costco and other wholesalers and retailers throughout the United States during the term of the Licensing Agreement, a use clearly outside the scope of the permissible use under the Licensing Agreement, without Pure Nature's consent. A sample of the packaging used by SunOpta to market and sell its fresh squeezed pasteurized orange juice is attached hereto as Exhibit "C."

16.     Paragraph 7(d) provides that:

> Each of the parties acknowledges that the parties will be irreparably damaged (and damages at law would be an inadequate remedy) if this Agreement is not specifically enforced. Therefore, in the event of a breach or threatened breach by any party of any provision of this Agreement, then the other party shall be entitled,

4

in addition to all other rights or remedies, to injunctions restraining such breach, without being required to show any actual damage or to post any bond or other security, and/or to a decree for specific performance of the provisions of this Agreement.

17.     Pure Nature has notified the Defendants of SunOpta's breach and has demanded that SunOpta cease and desist using the *Pure Nature* name, but the Defendants refuse to comply with these demands and in willful derogation of Pure Nature's trademark rights, continue to market and sell fresh squeezed pasteurized orange juice under the *Pure Nature* name. A copy of said notification is attached hereto as Exhibit "D."

18.     All conditions precedent to the filing of this action have been satisfied or have been waived.

19.     Pure Nature has retained the firm of Blaxberg, Grayson & Kukoff, P.A. to represent Plaintiff in this action and has agreed to pay the firm a reasonable attorney's fee.

**COUNT I**
**BREACH OF LICENSING AGREEMENT**
**(SUNOPTA)**

20.     Pure Nature realleges paragraphs 1 through 19 as if fully set forth herein.

21.     Under the Licensing Agreement, SunOpta was only permitted to use the *Pure Nature* name in connection with its marketing and sale of frozen vegetables and fruits.

22.     Plaintiff has learned that SunOpta has exceeded the scope of the permissible use of Pure Nature's U.S. Trademark under the Licensing Agreement by using the *Pure Nature* name in connection with its marketing and sale of fresh squeezed pasteurized orange juice.

23.     SunOpta's breach of the Licensing Agreement is material and excuses Pure Nature's performance, and in addition to damages, entitles Pure Nature to revoke the license and to cancel the Agreement.

24.     As a direct and proximate result of SunOpta's breach of contract, Pure Nature has been and continues to be damaged.

25.     In addition to damages, the parties to the Licensing Agreement acknowledge that a breach of the Licensing Agreement shall cause the non-breaching party to suffer irreparable harm for which the non-breaching party has no adequate remedy at law.

WHEREFORE, based upon the foregoing, Pure Nature demands judgment against SunOpta as follows:

1. Defendant be preliminarily and permanently enjoined from:

>     (a) reproducing, copying, counterfeiting, colorably imitating or otherwise using in any way, without the consent of Plaintiff, Plaintiff's registered trademark *Pure Nature* in connection with the sale, offering for sale, distribution, or advertising of SunOpta's goods;
>
>     (b) using in any way any other mark or designations so similar to Plaintiff's registered trademark as to be likely to cause confusion, or cause mistake, or deceive;

2. For damages, including but not limited to all gains, profits, and advantages derived by SunOpta from its unauthorized use of the *Pure Nature* name;

3. For the costs of this action and reasonable attorneys' fees;

4. For other such relief as the court deems proper.

## COUNT II
## DECLARATORY JUDGMENT
## (SUNOPTA)

26.     Pure Nature realleges paragraphs 1 through 19 as if fully set forth herein.

27.     The Licensing Agreement provides that on the anniversary of the Effective Date, SunOpta has an option to purchase the *Pure Nature* mark free of infringement, liens encumbrances, claim, pending or otherwise.

6

28.     Paragraph 7(d) of the Licensing Agreement also provides that in the event of a breach, the non-breaching party has a right to injunctive relief to enjoin the breach and to all other rights and remedies.

29.     During the term of the Licensing Agreement, and before the option ripened, SunOpta failed to satisfy conditions precedent under, and/or materially breached the Licensing Agreement by: (a) failing to timely pay the licensing fee on the Effective Date, and (b) without Pure Nature's authority or consent, using the *Pure Nature* mark in its marketing and sale of fresh squeezed pasteurized orange juice, a use beyond the scope of permitted uses of the *Pure Nature* mark.

30.     Based on the aforementioned failure to satisfy conditions precedent and/or breaches, which occurred during the term of the Licensing Agreement, Pure Nature revoked the license and has demanded that SunOpta cease and desist from further use of the Pure Nature name, and has demanded an accounting and damages from SunOpta in the form of profits generated from the sale of its orange juice. SunOpta rejects Pure Nature's revocation of the license and Pure Nature's demand for damages based on SunOpta's willful breach of the Licensing Agreement, and continues to assert its entitlement to exercise the option to purchase the *Pure Nature* mark, and to use the *Pure Nature* mark.

31.     Defendants have sold, and are now selling fresh squeezed pasteurized orange juice under the designation *Pure Nature*, such fresh squeezed pasteurized orange juice being manufactured and sold by Defendants in the packaging attached to this complaint as Exhibit "C" in a willful and wanton attempt to obtain the benefit of the good will and reputation that Plaintiff has established in its aforesaid trademark *Pure Nature*.

32.     Pure Nature is in doubt and uncertain as to its rights under the Licensing Agreement and whether SunOpta is entitled under the Licensing Agreement to unilaterally

7

exercise the option to purchase the *Pure Nature* mark where SunOpta materially breached the

Licensing Agreement during its term, and based on this breach, Pure Nature revoked the use the

*Pure Nature* name before the option ripened.

33.    A judicial declaration of Pure Nature's rights under the Licensing Agreement is

necessary and appropriate at this time for reasons stated above.

34.    Defendants' conduct by continuing to use the *Pure Nature* name despite

SunOpta's material breach of the Licensing Agreement is a violation of Pure Nature's trademark

rights, and such use is likely to cause confusion, or to cause mistake, or to deceive. As such,

unless and until enjoined and restrained by order of this court, Defendants' conduct will cause

immediate and irreparable injury, and Pure Nature's remedy at law is inadequate for the reasons

indicate above.

WHEREFORE, based upon the foregoing, Pure Nature demands judgment against

Defendants as follows:

1. For a judgment declaring that the Licensing Agreement be determined cancelled and

the license to the *Pure Nature* name revoked;

2. Defendant be preliminarily and permanently enjoined from:

(a) reproducing, copying, counterfeiting, colorably imitating or otherwise using in
any way, without the consent of Plaintiff, Plaintiff's registered trademark *Pure
Nature* in connection with the sale, offering for sale, distribution, or advertising of
SunOpta's goods;

(b) using in any way any other mark or designations so similar to Plaintiff's
registered trademark as to be likely to cause confusion, or cause mistake, or
deceive;

3. Defendant be ordered to deliver for destruction all signs, displays, advertisements,

packaging and any other materials in their possession or control, or in the possession or control

of their agents, bearing the complained of trademark, and all plates, molds, matrices, and other means of making the same;

4. Defendant be required to account for, and to pay over to Plaintiff all gains, profits, and advantages derived by them from their infringement and unfair competition;

5. For the costs of this action and reasonable attorneys' fees; and

6. For other such relief as the court deems proper.

## COUNT III
## VIOLATION OF THE LANHAM ACT, 15 USC § 1114
## COUNTERFEITING
## (SUNOPTA AND STERN)

35.     Pure Nature realleges paragraphs 1 through 19 as if fully set forth herein.

36.     Under the Licensing Agreement, SunOpta was only permitted to use the *Pure Nature* name in connection with its marketing and sale of frozen vegetables and fruits.

37.     With full knowledge of Pure Nature's rights in its mark, Defendants knowingly and willfully exceeded the scope of the permissible use of the *Pure Nature* mark under the Licensing Agreement, and without Pure Nature's consent, adopted and used the expression the *Pure Nature* name in connection with its marketing and sale of fresh squeezed pasteurized orange juice, such term being used on packaging of the goods and on displays used in direct association with the goods. An example of Defendants' packaging containing the complained of design is attached as Exhibit "C."

38.     After learning of Defendants' impermissible use of the term *Pure Nature*, Pure Nature notified the Defendants of their wrongful use and demanded that Defendants discontinue this conduct, and revoked the license and cancelled the Licensing Agreement, but the Defendants refused to comply with Plaintiff's demand and have continued to use it.

39.     Defendants' use of Pure Nature on fresh squeezed pasteurized orange juice is a willful and wanton attempt by it to obtain the benefit of the good will and reputation that Plaintiff has established in its registered trademark Pure Nature, and such use is likely to cause confusion, or to cause mistake, or to deceive the public to believe erroneously that Defendants' products are associated with Plaintiff or that Plaintiff has authorized Defendants' use of the *Pure Nature* name in connection with fresh squeezed pasteurized orange juice.

40.     Defendants have sold, and are now selling fresh squeezed pasteurized orange juice under the designation *Pure Nature*, such fresh squeezed pasteurized orange juice being manufactured by SunOpta and sold by Defendants in the packaging attached to this complaint as Exhibit "C"; such sales constitute a willful and wanton attempt to obtain the benefit of the good will and reputation that Plaintiff has established in its aforesaid trademark *Pure Nature*, and such use is likely to cause confusion, or to cause mistake, or to deceive.

41.     Defendants' acts constitute infringement of Plaintiff's rights in its trademark and the registration of that trademark, and Defendants will continue such infringement unless enjoined by this Court.

42.     By reason of the aforesaid infringement, Defendants have caused an injury to Plaintiff for which it has no adequate remedy at law.

WHEREFORE, Plaintiff requests that:

1. Defendants be preliminarily and permanently enjoined from:

(a) reproducing, copying, counterfeiting, colorably imitating or otherwise using in any way, without the consent of Plaintiff, Plaintiffs registered trademark *Pure Nature* in connection with the sale, offering for sale, distribution, or advertising of SunOpta's goods;

(b) using in any way any other mark or designations so similar to Plaintiff's registered trademark as to be likely to cause confusion, or cause mistake, or deceive;

2. Defendants be ordered to deliver for destruction all signs, displays, advertisements, packaging and any other materials in their possession or control, or in the possession or control of their agents, bearing the complained of trademark, and all plates, molds, matrices, and other means of making the same.

3. Defendants be required to account for, and to pay over to Plaintiff all gains, profits, and advantages derived by them from their infringement.

4. Defendants be ordered to pay to Plaintiff as damages a sum equal to three times the amount of Plaintiff's actual damages.

5. In the alternative, that the Court award statutory damages for any such use in connection with Defendants' sale, offering for sale, or distribution of fresh squeezed pasteurized orange juice:

> (a) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (b) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

6. Defendants be required to pay to Plaintiff the costs of this action and reasonable attorney fees.

7. The Court grant to Plaintiff such other and further relief as the Court may deem just.

## COUNT IV
## VIOLATION OF THE LANHAM ACT, 15 USC § 1125
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (SUNOPTA AND STERN)

43.     Pure Nature realleges paragraphs 1 through 19 as if fully set forth herein.

44.     As a result of Plaintiff's widespread and extensive use of, and advertising and promotion under, its registered trademark *Pure Nature*, such trademark has developed and now

has a distinctive meaning in the minds of the trade and public and has come to indicate to the trade and public the products of Plaintiff.

45.     Under the Licensing Agreement, SunOpta was only permitted to use the *Pure Nature* name in connection with its marketing and sale of frozen vegetables and fruits.

46.     Defendants have sold, and are now selling fresh squeezed pasteurized orange juice under the designation *Pure Nature*, such fresh squeezed pasteurized orange juice being manufactured and sold by Defendants in the packaging attached to this complaint as Exhibit "C"; such sales constitute a willful and wanton attempt to obtain the benefit of the good will and reputation that Plaintiff has established in its aforesaid trademark *Pure Nature*, and such use is likely to cause confusion, or to cause mistake, or to deceive.

47.     The aforesaid acts of the Defendants constitute false designation of origin of the goods that the Defendants are selling in that they are likely to cause the trade and the public to believe erroneously that Defendant's products are associated with Plaintiff or that Plaintiff has authorized Defendant's use of the *Pure Nature* name in connection with fresh squeezed pasteurized orange juice.

48.     The acts of Defendants constitute unfair competition with the Pure Nature in that these acts are calculated to result, and have resulted, in the unjust enrichment of Defendants since they avail to Defendants the benefit of Plaintiff's valuable good will, all to Plaintiff's great damage and detriment.

WHEREFORE, Plaintiff requests that:

1. Defendants be preliminarily and permanently enjoined from:

> (a) reproducing, copying, counterfeiting, colorably imitating or otherwise using in any way, without the consent of Plaintiff, Plaintiff's registered trademark *Pure Nature* in connection with the sale, offering for sale, distribution, or advertising of and related goods;

(b) using in any way any other mark or designations so similar to Plaintiff's registered trademark as to be likely to cause confusion, or cause mistake, or deceive;

(c) unfairly competing with Plaintiff by copying or imitating its trademark; or

(d) unfairly competing with Plaintiff in any other manner.

2. Defendants be ordered to deliver for destruction all signs, displays, advertisements, packaging and any other materials in their possession or control, or in the possession or control of their agents, bearing the complained of trademark, and all plates, molds, matrices, and other means of making the same.

3. Defendants be required to account for, and to pay over to Plaintiff all gains, profits, and advantages derived by them from their infringement and unfair competition.

4. Defendants be ordered to pay to Pure Nature as damages a sum equal to three times the amount of Plaintiff's actual damages.

5. Defendants be required to pay to Plaintiff the costs of this action and reasonable attorney fees.

6. The Court grant to Plaintiff such other and further relief as the Court may deem just.

## COUNT V
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## FLA. STAT. § 501.201, ET. SEQ.
## (SUNOPTA AND STERN)

49.    Pure Nature realleges paragraphs 1 through 18 as if fully set forth herein.

50.    SunOpta has engaged in deceptive and unfair trade practices by among other things:

a. infringing on Plaintiff's rights in its trademark and the registration of that trademark by using Plaintiff's registered trademark *Pure Nature* in connection with the sale, offering for sale, distribution, or advertising of fresh squeezed

13

pasteurized orange judice without Plaintiff's consent in violation of 11 USC § 1114;

b.  unfairly competing with Plaintiff by using Plaintiff's trademark in connection with the sale, offering for sale, distribution, or advertising of fresh squeezed pasteurized orange judice without Plaintiff's consent in violation of 11 USC §1125; and

c.  willfully and wantonly attempting to wrongfully obtain the benefit of the good will and reputation that Plaintiff has established in its registered trademark *Pure Nature* in connection with it unauthorized use of the Pure Nature mark on fresh squeezed pasteurized orange juice, such use being likely to cause confusion, or to cause mistake, or to deceive.

51.  As a direct and proximate result of SunOpta's deceptive and unfair trade practices, Pure Nature has suffered damages.

WHEREFORE, Plaintiff requests that:

1. Defendants be preliminarily and permanently enjoined from:

(a) reproducing, copying, counterfeiting, colorably imitating or otherwise using in any way, without the consent of Plaintiff, Plaintiff's registered trademark *Pure Nature* in connection with the sale, offering for sale, distribution, or advertising of and related goods;

(b) using in any way any other mark or designations so similar to Plaintiff's registered trademark as to be likely to cause confusion, or cause mistake, or deceive;

(c) unfairly competing with Plaintiff by copying or imitating its trademark; or

(d) unfairly competing with Plaintiff in any other manner.

2. Defendants be ordered to deliver for destruction all signs, displays, advertisements, packaging and any other materials in their possession or control, or in the possession or control

of their agents, bearing the complained of trademark, and all plates, molds, matrices, and other means of making the same.

3. Defendants be required to account for, and to pay over to Plaintiff all gains, profits, and advantages derived by them from their infringement and unfair competition.

4. Defendants be required to pay to Plaintiff the costs of this action and reasonable attorney fees.

5. The Court grant to Plaintiff such other and further relief as the Court may deem just.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION
## (SUNOPTA AND STERN)

52.     Pure Nature realleges paragraphs 1 through 19 as if fully set forth herein.

53.     Pure Nature is the prior user and owner of the trade name *Pure Nature*.

54.     The *Pure Nature* name has acquired secondary meaning, particularly among wholesalers and retailers of organic frozen vegetables and fruits like Costco, through the marketing efforts undertaken by Pure Nature prior its having licensed the *Pure Nature* name to SunOpta.

55.     SunOpta exceeded the scope of permissible uses under the Licensing Agreement by using the *Pure Nature* name in connection with its marketing and sale of fresh squeezed pasteurized orange juice to the retailers and wholesalers to whom Pure Nature developed and marketed the *Pure Nature* name, and Defendants continue to wrongfully use the *Pure Nature* name in competition with Plaintiff.

56.     As a result of the Defendants' action or threatened action, consumer confusion as to the source or sponsorship of the Defendants' goods is likely.

WHEREFORE, Plaintiff requests that:

1. Defendants be preliminarily and permanently enjoined from:

15

(a) reproducing, copying, counterfeiting, colorably imitating or otherwise using in any way, without the consent of Plaintiff, Plaintiff's registered trademark *Pure Nature* in connection with the sale, offering for sale, distribution, or advertising of and related goods;

(b) using in any way any other mark or designations so similar to Plaintiff's registered trademark as to be likely to cause confusion, or cause mistake, or deceive;

(c) unfairly competing with Plaintiff by copying or imitating its trademark; or

(d) unfairly competing with Plaintiff in any other manner.

2. Defendants be ordered to deliver for destruction all signs, displays, advertisements, packaging and any other materials in their possession or control, or in the possession or control of their agents, bearing the complained of trademark, and all plates, molds, matrices, and other means of making the same.

3. Defendants be required to account for, and to pay over to Plaintiff all gains, profits, and advantages derived by them from their infringement and unfair competition.

4. The Court grant to Plaintiff such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all causes of action alleged herein so triable.

DATED: August 3 1 , 2009.

BLAXBERG, GRAYSON & KUKOFF, P.A.
Attorneys for Pure Nature Organics, LLC
25 SE 2nd Avenue, Suite 730
Miami, Florida 33131
Tel: 305 381-7979

By: _____
Ian J. Kukoff, Esq.
Fla. Bar No. 827126

16

E X H I B I T   A



| | |
|---|---|
| Word Mark | PURE NATURE ORGANIC FRUITS & VEGETABLES |
| Goods and Services | IC 029. US 046. G & S: organically grown, frozen fruits and vegetables, namely green beans, broccoli, corn, carrots, peas, spinach, strawberries, blueberries, blackberries, raspberries and apricots. FIRST USE: 20030901. FIRST USE IN COMMERCE: 20030901 |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 05.03.25 - Leaf, single; Other leaves<br>26.11.20 - Rectangles inside one another<br>26.11.21 - Rectangles that are completely or partially shaded |
| Serial Number | 76504980 |
| Filing Date | March 31, 2003 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1B |
| Published for Opposition | July 20, 2004 |
| Registration Number | 2971821 |
| Registration Date | July 19, 2005 |
| Owner | (REGISTRANT) PURE NATURE ORGANICS, L.L.C. LTD LIAB CO FLORIDA 240 Crandon Blvd. Suite 260 Key Biscayne FLORIDA 33149 |



## TRADEMARK LICENSE AGREEMENT

This Agreement is made and entered into effective as of July ___, 2008 ("Effective Date") by and between SunOpta Global Organic Ingredients, Inc. ("Licensee"), a California corporation with offices at 335 Spreckels Drive, Aptos CA 95003 and Pure Nature Organics, LLC ("Licensor"), a Florida limited liability company with offices at 799 Crandon Blvd. #604, Key Biscayne, Florida 33149. Collectively, SGOI and Pure Nature are referred to in this Agreement as the "Parties" and each individually as a "Party."

### Preliminary Statements:

A.     Licensor owns and uses the name and/or trademark "PURE NATURE ORGANICS" (the "Mark") in connection with its business of selling frozen organic vegetables and fruits;

B.     Licensee, similar to Licensor, is in the business of selling frozen organic vegetables and fruits (the "<u>Business</u>");

C.     The Licensee desires to use the Mark in connection with its Business, and the Licensor desires to license the Marks to the Licensee pursuant to the terms and conditions of this Agreement.

### Agreement:

NOW THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1.     <u>License of Mark</u>.  Subject to the terms and conditions of this Agreement, the Licensor hereby grants to the Licensee, and Licensee hereby accepts, an exclusive license to use the Mark in an appropriate and tasteful manner, as determined in Licensee's sole discretion (i) solely in connection with the marketing and operation of the Business, and (ii) solely during the term of this Agreement, subject to the provisions of Section 6.

2.     <u>Rights Reserved; Limited Rights to Licensee</u>.  Licensor reserves all rights with respect to the Mark not expressly licensed to Licensee hereunder.  Licensee agrees that it will not utilize the Mark in any manner whatsoever other than in connection with the marketing and operation of the Business.

3.     <u>License Fee</u>.  Licensee shall pay a royalty to Licensor of $100 on the Effective Date.

4.     <u>Term</u>.  The term of this Agreement shall be for a period of one (1) year commencing on the Effective Date (the "Term").



5.   **No Joint Venture**.  The parties hereto agree that this Agreement and the license granted hereunder do not create a partnership, joint venture, principal/agent relationship or any other arrangement.

6.   **Option to Purchase**.  Upon the expiration of the Term, Licensee shall have the option to purchase for one dollar ($1.00) from Licensor all right, title, and interest in and to the Mark, free and clear of any infringement, lien, encumbrance, claim, pending or otherwise.

7.   **General**.  The parties agree to the following:

(a)   The provisions of this Agreement may not be amended, supplemented, waived or changed orally, but only by a writing signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought and making specific reference to this Agreement.

(b)   Neither party shall, directly or indirectly, assign or transfer (by operation of law or otherwise) its rights and/or obligations hereunder without the prior written consent of the other party to this Agreement.

(c)   All of the terms and provisions of this Agreement, whether so expressed or not, shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective legal representatives, successors and permitted assigns.

(d)   Each of the parties acknowledges that the parties will be irreparably damaged (and damages at law would be an inadequate remedy) if this Agreement is not specifically enforced.  Therefore, in the event of a breach or threatened breach by any party of any provision of this Agreement, then the other party shall be entitled, in addition to all other rights or remedies, to injunctions restraining such breach, without being required to show any actual damage or to post any bond or other security, and/or to a decree for specific performance of the provisions of this Agreement.

(e)   The validity, interpretation, performance and enforcement of this Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Florida without regard to principles of conflicts of laws and applicable federal law relating to the protection of intellectual property rights. Each party agrees that any proceeding arising out of or relating to this Agreement or the breach or threatened breach of this Agreement may be commenced and prosecuted in a state or federal court, as the case may be, in the county of Miami-Dade, State of Florida. Each party consents and submits to the exclusive personal jurisdiction of any such court in respect of any such proceeding. Each party consents to service of process upon it with respect to any such proceeding by registered mail, return receipt requested, and by any other means permitted by applicable laws and rules. Each party hereby irrevocably waives any objection that it may now or hereafter have to the laying of venue of any such proceeding in any such court and any claim that it may now or hereafter have that any such proceeding in any such court has been brought in an inconvenient forum. In the event of any litigation between the parties with respect to this Agreement, the prevailing party therein shall be entitled to receive from the non-prevailing

party therein all of such prevailing party's expenses (including attorneys' fees) incurred in connection with such litigation.

(f)     This Agreement represents the entire understanding and agreement among the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and among such parties.

(g)     At any time and from time to time after the date hereof, Licensee shall, at its own cost and expense, execute, deliver and acknowledge such other documents and take such further actions as may be reasonably requested by the Licensor in order to fully protect Licensor's interest in the Mark.

(h)     If any provision of this Agreement shall be held to be invalid, unenforceable or illegal, in whole or in part, in any jurisdiction under any circumstances for any reason, (a) such provision shall be reformed to the minimum extent necessary to cause such provision to be valid, enforceable and legal while preserving the intent of the parties as expressed in, and the benefits to the parties provided by, this Agreement or (b) if such provision cannot be so reformed, such provision shall be severed from this Agreement and an equitable adjustment shall be made to this Agreement (including, without limitation, addition of necessary further provisions to this Agreement) so as to give effect to the intent as so expressed and the benefits so provided.  Such holding shall not affect or impair the validity, enforceability or legality of such provision in any other jurisdiction or under any other circumstances.  Neither such holding nor such reformation or severance shall affect or impair the legality, validity or enforceability of any other provision of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the day and year first above written.

LICENSOR:

PURE NATURE ORGANICS, LLC, a Florida limited liability company

By: _____
Its: _Presiden_____


LICENSEE:

SUNOPTA GLOBAL ORGANIC INGREDIENTS, INC., a California corporation

By: _____

party therein all of such prevailing party's expenses (including attorneys' fees) incurred in connection with such litigation.

(f)    This Agreement represents the entire understanding and agreement among the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and among such parties.

(g)    At any time and from time to time after the date hereof, Licensee shall, at its own cost and expense, execute, deliver and acknowledge such other documents and take such further actions as may be reasonably requested by the Licensor in order to fully protect Licensor's interest in the Mark.

(h)    If any provision of this Agreement shall be held to be invalid, unenforceable or illegal, in whole or in part, in any jurisdiction under any circumstances for any reason, (a) such provision shall be reformed to the minimum extent necessary to cause such provision to be valid, enforceable and legal while preserving the intent of the parties as expressed in, and the benefits to the parties provided by, this Agreement or (b) if such provision cannot be so reformed, such provision shall be severed from this Agreement and an equitable adjustment shall be made to this Agreement (including, without limitation, addition of necessary further provisions to this Agreement) so as to give effect to the intent as so expressed and the benefits so provided. Such holding shall not affect or impair the validity, enforceability or legality of such provision in any other jurisdiction or under any other circumstances. Neither such holding nor such reformation or severance shall affect or impair the legality, validity or enforceability of any other provision of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the day and year first above written.

LICENSOR:

PURE NATURE ORGANICS, LLC, a Florida limited liability company

By:_____
Its:_____

LICENSEE:

SUNOPTA GLOBAL ORGANIC INGREDIENTS, INC., a California corporation

By: _Joseph Stan_
    President

Its: _____ President _____



Pure Nature®

USDA ORGANIC

100% VALENCIA

ORGANIC

ORANGE

JUICE

NOT FROM CONCENTRATE

Excellent Natural Source of Vitamin C

Good Source of Potassium

Good Source of Folate (Folic Acid)

2 HALF GALLONS 64 OZ (1.89 L) CARTONS

EXHIBIT

C



Pure Nature

USDA ORGANIC

100% VALENCIA
ORGANIC
ORANGE
JUICE
NOT FROM CONCENTRATE

Pasteurized

NET 64 FL OZ HALF GALLON (1.89 L)

Take a drink of our organic
100% Valencia orange juice that
been squeezed from a batch of
and you'll immediately realize
why Valencia oranges are
for their taste.

Our organic
ripened on the tree
and bottled.
Valencia oranges
from

In addition
orange
source of V

LAW OFFICES

# BLAXBERG, GRAYSON & KUKOFF, P. A.

PROFESSIONAL ASSOCIATION
SUITE 730, INGRAHAM BUILDING
25 SOUTHEAST SECOND AVENUE
MIAMI, FLORIDA 33131-1506
TELEPHONE (305) 381-7979
FACSIMILE (305) 371-6816

IAN J. KUKOFF
WRITER'S DIRECT LINE:
305-381-7979 EXT. 312
E-MAIL: IAN.KUKOFF@BLAXGRAY.COM

July 27, 2009

**VIA CERTIFIED MAIL AND**
**U.S. MAIL**

Joseph Stern, President
Sun Opta Global Ingredients, Inc.
335 Spreckels Drive
Aptos, CA 95003

Re:   **Pure Nature Organics, LLC – Sun Opta Global Ingredients, Inc.**

Dear Mr. Stern:

This law firm represents Pure Nature Organics, LLC ("Pure Nature").  Our client received an e-mail from Shaun Seidel of your company in which he purports to seek execution of an assignment of my client's duly licensed trademark pursuant to a certain Trademark Licensing Agreement (the "Licensing Agreement") with an effective date of August 4, 2008.  Please be advised that the Licensing Agreement never became effective because Sun Opta never paid the $100.00 licensing fee on the Effective Date as prescribed by the Agreement.  Timely payment of the fee was a condition precedent to the Licensing Agreement becoming effective, and the failure to have paid the licensing fee rendered the Licensing Agreement null and void.

Any contention that sums that were allegedly paid in conjunction with other transactions between the parties satisfied this obligation is rejected.  The payment of the licensing fee on the Effective Date was a condition to the Licensing Agreement becoming effective, and subsequent conditions, transactions or alleged payments by Sun Opta of Pure Nature debts after the Effective Date of the Licensing Agreement could not revive the Licensing Agreement.

Further, assuming that the Licensing Agreement had become effective, Pure Nature has come to learn that Sun Opta exceeded the scope of the permissible use under the Licensing Agreement.  Pursuant to Section 1 of the Agreement, the use of the mark was licensed solely in connection with the marketing and operation of the "Business."  The Business is defined as "the selling of frozen organic vegetables and fruits."  Paragraph 2 of the Licensing Agreement explicitly reserves unto Pure Nature all rights with respect to the mark not expressly licensed to the licensee.  Sun Opta further agreed

**EXHIBIT**

D

Joseph Stern
July 27, 2009
Page 2 of 2

that it would not utilize the mark "in any other manner whatsoever other than in the marketing and operation of the Business," again defined as the sale of frozen organic vegetables and fruit. We have learned that Sun Opta has been using this mark in conjunction with the sale of fresh squeezed orange juice to Costco, a use clearly outside the scope of the permissible use under the Licensing Agreement. Pure Nature has in the past, and intends in the future to use the Pure Nature mark with respect to the sale and marketing of its fresh fruits and vegetables. The mark is duly registered in the Netherlands, and has and will continue to be used in conjunction with the sale and marketing of fresh fruits and vegetables. The use of the mark in connection with your sale of fresh squeezed orange juice constitutes a willful violation of the Licensing Agreement, infringes upon Pure Nature's trademark rights, and entitles Pure Nature to damages under the Lanham Act for statutory and actual damages, and attorney's fees.

Demand is made that Sun Opta cease and desist from any further use of the Pure Nature name in connection with any of its products. Further, demand is made that Sun Opta provide an accounting of all profits that were generated by Sun Opta derived from the sale of its products under the Pure Nature name, including but not limited to the sale of fresh squeezed orange juice. My client is entitled to actual damages as a result of the infringement on its rights and based upon Sun Opta's breach of the Licensing Agreement.

If Sun Opta fails to comply with the demands made herein within ten (10) days of the date of this letter, Pure Nature has authorized our firm to pursue legal action in order to enjoin the future use of the Pure Nature name, to seek actual statutory and exemplary damages under statute and common law, and for attorney's fees and costs.

**GOVERN YOURSELF ACCORDINGLY.**

Very truly yours,

Ian J. Kukoff

cc:   Marc Meurs
      William Rohrer, Esq.

IJK/jc/3032

*≈JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Pure Nature Organics, LL

09 - 22978

## DEFENDANTS

SunOpta Global Organic Ingredients, Inc. and Joseph J. Stern

OCT 0 2 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

J. McALILEY

Blaxberg, Grayson & Kukoff, P.A.
25 S.E. 2nd Avenue, Suite 730
Miami, Florida 33131
305-381-7979

Attorneys (If Known)

Nicklaus & Associates, P.A.     CORAL GABLES, FL 33146
4651 Ponce De Leon Blvd., #200   (305) 460-9888

**(d)** Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

09cv22978- GOD/McNiley

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☑ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☑ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization | | ☐ 950 Constitutionality of State |
| | Employment | ☐ 550 Civil Rights | Application | | Statutes |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien | | |
| | Other | | Detainee | | |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original
      Proceeding
☑ 2 Removed from
      State Court
☐ 3 Re-filed-
      (see VI below)
☐ 4 Reinstated or
      Reopened
☐ 5 Transferred from
      another district
      (specify)
☐ 6 Multidistrict
      Litigation
☐ 7 Appeal to District
      Judge from
      Magistrate
      Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions
second page):

a) Re-filed Case ☐ YES ☑ NO        b) Related Cases ☐ YES ☑ NO

JUDGE                                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

15 USC 1114 and 15 USC 1125

Trademark Dispute pursuant to Lanham Act
LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD       DATE

FBN 057438       10/2/09

**FOR OFFICE USE ONLY**

AMOUNT $ 350.00   RECEIPT # 100 9301   IFP