FILED by _____ D.C.
INTAKE

OCT 0 2 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| Pure Nature Organics, LLC, | Case No.: 09-_____ CIV-_____ |
| Plaintiff, | Magistrate Judge _____ |
| v. | **09-22978** |
| SunOpta Global Organic Ingredients, Inc., and Joseph J. Stern, | **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |
| Defendants. | **JURY DEMAND** |
| and | |
| SunOpta Global Organic Ingredients, Inc., | |
| Counterclaimant, | CIV - GOLD |
| v. | McALILEY |
| Marcus Meurs, | |
| Additional Counterdefendant. | |

Defendants SunOpta Global Organic Ingredients, Inc. ("SGOI") and Joseph J. Stern ("Stern") (collectively, "Defendants"), by and through their counsel of record, hereby deny each and every fact, matter and thing in the Complaint filed by Plaintiff Pure Nature Organics, LLC ("Pure Nature") except as hereinafter may be more specifically admitted or denied, and for their Counterclaims against Pure Nature and Marcus Meurs state as follows:

### JURISDICTION AND VENUE

1.    Defendants lack sufficient knowledge or information upon which to form a belief as to the truth of the allegations in Paragraph 1 and, on that basis, deny them.

2.    Defendants admit the allegations in Paragraph 2, upon information and belief.

3.    Defendants admit that SGOI is a California corporation with its principal place of business in Aptos, California, but otherwise deny the allegations in Paragraph 3.

4.     Defendants admit that Stern is a resident of the state of California, and that Stern is the president and Chief Executive Officer of SGOI. Defendants deny that Stern is subject to personal jurisdiction in Florida. Defendants further deny that Stern does substantial business in Florida and/or in this judicial district and further deny each and every allegation not expressly admitted herein.

5.     Defendants admit that the Licensing Agreement calls for venue in Miami-Dade County, Florida. Defendants deny that jurisdiction or venue are proper with respect to Stern, who is not and has never been a party to any licensing agreement with Plaintiff. Defendants further deny each and every other allegation not expressly admitted herein.

## GENERAL ALLEGATIONS AS TO ALL COUNTS

6.     Defendants deny the allegations in Paragraph 6.

7.     Defendants deny the allegations in Paragraph 7.

8.     Defendants state that any registrations alleged by it speak for themselves to the extent that Pure Nature's allegations differ from the records of the U.S. PTO, those allegations are denied.

9.     Defendants lack sufficient knowledge or information upon which to form a belief as to the truth of the allegations in Paragraph 9 and, on that basis, deny them.

10.     Defendants admit that SGOI entered into an agreement with Pure Nature that purports to be a "Trademark License Agreement," admit that a copy of this agreement is alleged to be attached as Exhibit B to the Complaint, and affirmatively allege that the agreement speaks for itself. Defendants otherwise deny the allegations in Paragraph 10.

11.     Defendants admit that, pursuant to the agreement referenced in Paragraph 10, a "royalty" of $100 was to be paid on the Effective Date. Defendants otherwise deny the allegations in Paragraph 11.

12.     Defendants admit that the language quoted in Paragraph 12 appears in the agreement referenced in Paragraph 10, but otherwise denies the allegations in Paragraph 12. Defendants affirmatively allege that the agreement speaks for itself.

13.     Defendants admit that the language quoted in Paragraph 13 appears in the agreement referenced in Paragraph 10, but otherwise denies the allegations in Paragraph 13.

14.     Defendants deny the allegations in Paragraph 14.

15.     Defendants admit that SGOI has sold fresh-squeezed, pasteurized orange juice to Costco and further admit that SGOI has used the packaging attached to the Complaint as Exhibit C in doing so.  Defendants otherwise deny the allegations in Paragraph 15.

16.     Defendants admit that the language quoted in Paragraph 16 appears in the agreement referred to in Paragraph 10 of the Complaint.

17.     Defendants admit that SGOI received the letter attached to the Complaint as Exhibit D and admit that SGOI continues to sell fresh-squeezed pasteurized orange juice. Defendants deny that SGOI breached the agreement with Pure Nature, deny that SGOI has infringed any of Pure Nature's trademark rights, and otherwise deny the allegations in Paragraph 17.

18.     Defendants deny the allegations in Paragraph 18.

19.     Defendants lack sufficient knowledge or information upon which to form a belief as to the truth of the allegations in Paragraph 19 and, on that basis, deny them.

### COUNT I (SUNOPTA)

20.     Defendants admit that Plaintiff realleges the allegations from paragraphs 1 through 19 into paragraph 20 of its Complaint and Defendants hereby incorporate their responses to those paragraphs as though fully set forth herein.

21.     Defendants deny the allegations in Paragraph 21.

22.     Defendants admit that SGOI has sold fresh-squeezed, pasteurized orange juice and further admit that SGOI has used the packaging attached to the Complaint as Exhibit C in doing so.  Defendants otherwise deny the allegations in Paragraph 22.

23.     Defendants deny the allegations in Paragraph 23.

24.     Defendants deny the allegations in Paragraph 24.

25.     Defendants admit that the agreement referenced in Paragraph 10 states that the parties "acknowledge[] that the parties will be irreparably damaged (and damages at law would be an inadequate remedy) if this Agreement is not specifically enforced." Defendants otherwise deny the allegations in Paragraph 25.

## COUNT II (SUNOPTA)

26.     Defendants admit that Plaintiff realleges the allegations from paragraphs 1 through 19 into paragraph 26 of its Complaint and Defendants hereby incorporate their responses to those paragraphs as though fully set forth herein.

27.     Defendants admit that the agreement referenced in Paragraph 10 purports to offer an "option" to purchase the "PURE NATURE ORGANICS" mark for $1.00, but, at least in part because of the *de minimis* price of this "option," Defendants deny that this provision of the agreement was truly an option.

28.     Defendants affirmatively allege that the Agreement referenced in Paragraph 10 of the Complaint speaks for itself and therefore deny the allegations contained in Paragraph 28 of the Complaint to the extent those characterizations are inconsistent with the summarized document.

29.     Defendants deny the allegations in Paragraph 29.

30.     Defendants admit that Pure Nature has demanded that SGOI cease further use of the Pure Nature name and has demanded an accounting and damages from SGOI. Defendants further admit that SGOI has denied, and continues to deny, that it has breached an agreement with Pure Nature, and that it has infringed any trademark rights of Pure Nature. Except as expressly admitted herein, Defendants deny each of the allegations in Paragraph 30.

31.     Defendants admit that SGOI has sold fresh-squeezed, pasteurized orange juice and further admit that SGOI has used the packaging attached to the Complaint as Exhibit C in doing so. Defendants otherwise deny the allegations in Paragraph 31.

32.     Defendants lack sufficient knowledge or information upon which to form a belief as to the truth of the allegations in Paragraph 32 and, on that basis, deny them.

33.     Paragraph 33 contains no factual allegations and, therefore, no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 33.

34.     Paragraph 34 contains no factual allegations and, therefore, no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 34.

## COUNT III (SUNOPTA AND STERN)

35.     Defendants admit that Plaintiff realleges the allegations from paragraphs 1 through 19 into paragraph 25 of its Complaint and Defendants hereby incorporate their responses to those paragraphs as though fully set forth herein.

36.     Defendants deny the allegations in Paragraph 36.

37.     Defendants admit that SGOI has sold fresh-squeezed, pasteurized orange juice and further admit that SGOI has used the packaging attached to the Complaint as Exhibit C in doing so. Defendants otherwise deny the allegations in Paragraph 37.

38.     Defendants admit that Pure Nature notified SGOI of alleged wrongful conduct, and further admit that Defandants denies any wrongdoing and continued to sell fresh-squeezed, pasteurized orange juice using the packaging attached to the Complaint as Exhibit C. Defendants otherwise deny each of the allegations in Paragraph 38.

39.     Defendants deny the allegations in Paragraph 39.

40.     Defendants admit that SGOI has sold fresh-squeezed, pasteurized orange juice and further admit that SGOI has used the packaging attached to the Complaint as Exhibit C in doing so. Defendants otherwise deny the allegations in Paragraph 40.

41.     Defendants deny the allegations in Paragraph 41.

42.     Defendants deny the allegations in Paragraph 42.

Portlnd1-2561717.1 0049129-00007

### COUNT IV (SUNOPTA AND STERN)

43.     Defendants admit that Plaintiff realleges the allegations from paragraphs 1 through 19 into paragraph 43 of its Complaint and Defendants hereby incorporate their responses to those paragraphs as though fully set forth herein.

44.     Defendants deny the allegations in Paragraph 44.

45.     Defendants deny the allegations in Paragraph 45.

46.     Defendants admit that SGOI has sold fresh-squeezed, pasteurized orange juice and further admit that SGOI has used the packaging attached to the Complaint as Exhibit C in doing so.  Defendants otherwise deny the allegations in Paragraph 46.

47.     Defendants deny the allegations in Paragraph 47.

48.     Defendants deny the allegations in Paragraph 48.

### COUNT V (SUNOPTA AND STERN)

49.     Defendants admit that Plaintiff realleges the allegations from paragraphs 1 through 19 into paragraph 49 of its Complaint and Defendants hereby incorporate their responses to those paragraphs as though fully set forth herein.

50.     Defendants deny the allegations in Paragraph 50, and affirmatively allege that no factual or legal allegations have been asserted against Defendant Stern.

51.     Defendants deny the allegations in Paragraph 51, and affirmatively allege that no factual or legal allegations have been asserted against Defendant Stern.

### COUNT VI (SUNOPTA AND STERN)

52.     Defendants admit that Plaintiff realleges the allegations from paragraphs 1 through 19 into paragraph 52 of its Complaint and Defendants hereby incorporate their responses to those paragraphs as though fully set forth herein.

53.     The allegations in Paragraph 53 are vague and ambiguous.  For example, it is unclear what the intended meaning of "the prior user" is.  It is also unclear whether Pure Nature is alleging that it is the current owner, or the prior owner, of the trade name "Pure Nature."  In view of the foregoing, Defendants deny the allegations in Paragraph 53.

PortInd1-2561717.1 0049129-00007

54.     Defendants lack sufficient knowledge or information upon which to form a belief as to the truth of the allegations in Paragraph 54 and, on that basis, deny them.

55.     Defendants deny the allegations in Paragraph 55.

56.     Defendants deny the allegations in Paragraph 56.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses and reserve the right to assert additional defenses that may become apparent during the course of investigation and/or discovery and hereby reserve the right to amend this Answer to assert any such defense.

### First Affirmative Defense
### (Naked License)

1.     Pure Nature's claims are barred, in whole or in part, by the doctrine of naked licensing.

### Second Affirmative Defense
### (Laches/Estoppel/Waiver)

2.     Pure Nature's claims against Defendants are barred by laches, estoppel, and/or waiver.

### Third Affirmative Defense
### (Unclean Hands)

3.     Upon information and belief, Pure Nature's claims against Defendants are barred by the doctrine of unclean hands.

### Fourth Affirmative Defense
### (Accord and Satisfaction)

4.     Pure Nature's Complaint, and each and every cause of action therein, is barred, either in whole or in part, by the doctrine of accord and satisfaction.

### Fifth Affirmative Defense
### (Lack of Personal Jurisdiction)

5.     Pure Nature's claims against Stern should be dismissed in their entirety because this Court lacks personal jurisdiction over Stern.

### Sixth Affirmative Defense
### (Breach of Implied Covenant)

6.      Pure Nature's claims are barred, in whole or in part, by Pure Nature's breach of the covenant of good faith and fair dealing.

### Seventh Affirmative Defense
### (Unjust Enrichment)

7.      Pure Nature's claims are barred, in whole or in part, by the doctrine of unjust enrichment.

### Eighth Affirmative Defense
### (Failure to State a Claim)

8.      Pure Nature's Complaint fails to state a claim upon which relief can be granted.

### Ninth Affirmative Defense
### (Abandonment)

9.      Pure Nature's claims are barred, in whole or in part, because it has abandoned its asserted trademark rights.

### Tenth Affirmative Defense
### (Assignment)

10.     Pure Nature's claims are barred, in whole or in part, because it has assigned any and all rights to the asserted trademark to SGOI.

### Eleventh Affirmative Defense
### (Standing)

11.     Pure Nature lacks standing to bring claims under the Lanham Act against SGOI. SGOI is not a competitor to Pure Nature.  Pure Nature does not sell competing products.  Pure Nature is contractually prohibited from competing with SGOI.

### Twelfth Affirmative Defense
### (Statute of Frauds)

12.     Pure Nature's claims are barred by the Statute of Frauds.

### Thirteenth Affirmative Defense
### (Consent)

13.     Pure Nature's claims are barred because Pure Nature consented to SGOI's use of the Mark.

Portlnd1-2561717.1 0049129-00007

## RESERVATION OF DEFENSES

14.     Defendants intend to rely upon any additional affirmative and separate defense that may become apparent during the course of investigation and/or discovery and hereby reserve the right to amend this Answer to assert any such defense.

**WHEREFORE**, Defendants pray for judgment in their favor and against Plaintiff as follows:

1.     That Pure Nature take nothing by way of its Complaint;

2.     That Defendants be awarded judgment against Pure Nature and awarded their costs and attorneys' fees; and

3.     That Defendants be awarded such other and further relief as this Court deems just and proper.

## JURY DEMAND

SGOI demands a trial by jury as to all issues so triable.

## COUNTERCLAIMS AGAINST PURE NATURE

For its counterclaims, SGOI alleges as follows:

## INTRODUCTION

1.     In August 2008, SGOI, Pure Nature and Pure Nature's founder Marcus Meurs entered into a series of six related agreements governing a complicated relationship among the parties.

2.     The purpose of the agreements was to allow Pure Nature to exit the business of selling food products.  Pure Nature departed the business because it was unable to satisfy the requirements of its customers and was unable to provide products of the required quality to its customers.

3.     SGOI is in the business of selling and making high quality organic fruits, vegetables and derivatives of organic fruits and vegetables, including orange juice.  Under the agreements, Pure Nature ceased to do business as a food supplier and distributor.  Pure Nature was unable to pay its creditors, including ExpoCredit Corporation ("ExpoCredit") and defaulted

on various loan instruments as a result of, among other things, fraudulently labeling product sold in the United States as "Product of Guatemala" when the product was produced China. When the United States Department of Agriculture discovery the fraud, Pure Nature was on the verge of collapse. At that point, Pure Nature entered into the agreements with SGOI. Pure Nature is not attempting to get out of its contractual obligations.

4.      Through the agreements between the parties, Pure Nature assigned its trademark rights to SGOI.

5.      SGOI's products sold under the trademark acquired from Pure Nature have now gained acceptance in the marketplace owing to the high quality of SGOI's goods and consumers attribution of the trademark to SGOI.

6.      In addition, under the terms of a Product Supply Agreement, Pure Nature agreed not to compete with SGOI and agreed to assign to SGOI Pure Nature's customer relationships. After all of the agreements were executed, SGOI never ordered any product from Pure Nature, or its affiliates, because of quality issues with the product.

7.      In a Payment Agreement dated August 27, 2008, SGOI and Pure Nature agreed that any payments due to Pure Nature under any of the other agreements would be made not to Pure Nature, but instead, to Pure Nature's creditor ExpoCredit.

8.      Mr. Meurs also agreed to promote SGOI's products and not to compete with SGOI.

9.      In exchange for the foregoing agreements, SGOI paid $20,000 on behalf of Pure Nature to Pure Nature's creditor ExpoCredit, and paid Mr. Meurs $428,000.

10.     SGOI paid $20,000 to ExpoCredit on behalf of Pure Nature as consideration for ExpoCredit's release of its security interest in Pure Nature's trademark rights.

11.     Upon receipt of the $20,000, ExpoCredit and Pure Nature entered into a Release Agreement wherein ExpoCredit released its security interest in Pure Nature's trademark rights.

12.     Despite the fact that SGOI paid $20,000 to Pure Nature, pursuant to the Payment Agreement, Pure Nature and Mr. Meurs, its alter ego, now attempts to invalidate the assignment

of Pure Nature's trademark rights to SGOI because SGOI allegedly failed to timely pay a nominal consideration of $100 to Pure Nature.

13.     In February 2009, SGOI tendered payment of $100 to Pure Nature, which Pure Nature accepted.

## PARTIES

14.     Counterclaimant SGOI is a California corporation with its principal place of business located in Aptos, California.

15.     Counterdefendant Pure Nature is a Florida limited liability company, which has its principal place of business, on information and belief, in Miami-Dade County, Florida at 799 Crandon Blvd. #604, Key Biscayne, Florida.

16.     Counterdefendant Marcus Meurs, a Dutch national, is the founder and chief executive of Pure Nature who resides in Florida and has, on information and belief, his principal place of business 799 Crandon Blvd. #604, Key Biscayne, Florida.

## JURISDICTION AND VENUE

17.     These counterclaims arise in part under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and the Lanham Act, 15 U.S.C. §§ 1051, 1114 (2007) *et seq.*, and as such the Court has subject matter jurisdiction over the counterclaims under 28 U.S.C. §§ 1331 and 1367.

18.     Alternatively, the Court has subject jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1332, as the value of the damages, injunction and other relief requested (exclusive of costs and interest) exceeds $75,000, and because there is complete diversity between the counterclaimant SGOI, a California company, and the counterdefendants Pure Nature and Marcus Meurs, both of which are citizens of Florida.

19.     Venue is proper under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

20.     Because of the complicated nature of the relationship between Pure Nature, SGOI and Marcus Meurs, in an agreement labeled the Escrow Agreement, the parties agreed that: "the

-11-

Product Supply Agreement, the Brokerage Agreement and the Trademark License Agreement shall collectively be referred to as the 'Combined Agreements.'"

21.     The Combined Agreements are integrated agreements and each agreement should be read in conjunction with the other agreements.

### Trademark License Agreement

22.     On August 4, 2008, SGOI entered into a contract styled as a Trademark License Agreement ("License Agreement") with Pure Nature on August 4, 2008 for a term of one year.

23.     Under the License Agreement, Pure Nature licensed its trademark "PURE NATURE ORGANICS" (the "Mark") to SGOI.

24.     The Licensing Agreement allowed SGOI to use the Mark "in connection with the marketing and operation of the Business" of SGOI.

25.     SGOI is in the business of selling frozen organic vegetables and fruits, including orange juice, which has a frozen component.

26.     In the License Agreement, Pure Nature also agreed to sell all of its interest in the Mark to SGOI.

27.     The Option to Purchase found in the License Agreement provides: "Upon the expiration of the Term, Licensee shall have the option to purchase for one dollar ($1.00) from Licensor all right, title, and interest in and to the Mark, free and clear of any infringement, lien, encumbrance, claim, pending or otherwise."

28.     SGOI timely exercised its option to purchase the Mark.

29.     By letter dated July 27, 2009, Pure Nature refused to honor its contractual promise to assign the Mark to SGOI thereby breaching the License Agreement.

30.     The License Agreement does not provide to Pure Nature any powers of quality control with respect to SGOI's use of the Mark or the products sold under the Mark.

31.     The License Agreement does not obligate SGOI to ensure quality control over its use of the Mark.

32.     Pure Nature has taken no actions whatsoever to supervise or control the quality of SGOI's products or SGOI's use of the Mark.

### Brokerage Agreement

33.     Also on August 4, 2008, SGOI entered into a Brokerage Agreement with Marcus Meurs.

34.     Under the terms of the Brokerage Agreement, Mr. Meurs agreed to serve as a broker for SGOI.

35.     Mr. Meurs agreed to "diligently promote the sale of SGOI's products."

36.     Mr. Meurs also agreed to "faithfully serve and use his best efforts to promote the interests of SGOI."

37.     In addition, Mr. Meurs agreed not to compete with SGOI.

38.     The Brokerage Agreement provides that certain off-sets and charge backs owing to SGOI would be deducted against any commissions to be paid to Mr. Meurs under the Brokerage Agreement.

39.     The Brokerage Agreement also provides that the Brokerage Agreement can be terminated by SGOI upon "any act by Broker [Marcus Meurs] which materially impairs the good will associated with SGOI or its affiliates' trademarks, trade names, service marks, logotypes, or other commercial symbols."

### Product Supply Agreement

40.     In the Product Supply Agreement, Pure Nature's affiliates Dutch Food Company, LLC and Exportadora Unifresh, S.A., agreed to commit 80% of the plantable acreage under its control for the purpose of selling SGOI's affiliate Global Food Services Corporation S.A. de C.V. organic food products.

41.     In addition, Pure Nature agreed to assign to SGOI all of the intangible assets associated with certain customer relationships.

42.     One of the customer relationships assigned to SGOI was Costco USA.

-13-

43.     Under the Product Supply Agreement, Pure Nature assigned to SGOI all interest and rights to sell food products to Costco USA.

44.     Under the related License Agreement, SGOI was to sell those food products to Costco USA using the Pure Nature Mark.

45.     In the Product Supply Agreement, Pure Nature also agreed not to compete with SGOI in any way for a period of six years.

46.     Pure Nature also agreed as part of the Product Supply Agreement to obtain a release from its creditor ExpoCredit "of ExpoCredit's security interest in Pure Nature's trademark 'PURE NATURE ORGANICS,' and the rights, tangible and intangible, conveyed by Pure Nature to SGOI under this Agreement."

47.     As such, a transfer of all of Pure Nature's trademark rights in the Mark was clearly contemplated in the Product Supply Agreement.

48.     In exchange for the trademark rights and other intangible rights transferred by Pure Nature to SGOI, including rights to sell product to Costco USA and Costco Mexico under the Mark, SGOI paid $20,000 to Pure Nature's secured creditor ExpoCredit.

### Release Agreement

49.     On August 4, 2008, Pure Nature also executed a Release Agreement with its creditor ExpoCredit.

50.     The Release Agreement acknowledges payment to ExpoCredit of $20,000, which was paid by SGOI to ExpoCredit pursuant to the terms of the Product Supply Agreement.

51.     In exchange for the $20,000 payment from Pure Nature, ExpoCredit released all right, title and interest in the following assets:

> a.     The trademark PURE NATURE ORGANIC FRUITS & VEGETABLES (and Design), Registration No. 2,971,821 (the "Trademark"), as registered with the U.S. Patent and Trademark Office, and the goodwill associated with the Trademark, and all rights in the Trademark including without limitation the common law use of the Trademark; and

      b.      All rights, tangible and intangible, conveyed by Pure Nature to SunOpta Global Organic Ingredients, Inc. ("SGOI") under the Product Supply Agreement dated July __, 2008 between SGOI, Pure Nature, Dutch Food Company, LLC and Exportadora Unifresh S.A.

52.    SGOI is an intended third-party beneficiary of the Release Agreement.

53.    Pure Nature received a benefit in obtaining a release of all security interest in its Mark in exchange for the $20,000 paid by SGOI to ExpoCredit.

54.    It would be unjust to allow Pure Nature to retain any benefit obtained from ExpoCredit that was in exchange for money received from SGOI.

### Escrow Agreement

55.    On August 1, 2008, Pure Nature, SGOI and Marcus Meurs executed an Escrow Agreement with Carlton Fields, P.A., the escrow agent, and Pure Nature's creditor ExpoCredit, as well as Dutch Food Company and Exportadora, Pure Nature's affiliates.

56.    Under the Escrow Agreement, the parties agreed that "the Product Supply Agreement, the Brokerage Agreement and the Trademark License Agreement shall collectively be referred to as the 'Combined Agreements.'"

57.    The parties also acknowledged that "SGOI has agreed to pay to Pure Nature's creditor $20,000 upon execution and delivery of the Product Supply Agreement and to pay Broker [Marcus Meurs] $428,000 upon execution and delivery of the Brokerage Agreement."

### Pure Nature Abandoned Any Interest or Right in the Mark

58.    Pure Nature granted SGOI a naked license under which Pure Nature failed to retain any right or ability to control the quality of the goods to be sold under the license.

59.    After Pure Nature granted SGOI a naked license agreement to the Mark, Pure Nature ceased doing business or using the Mark.

60.    A trademark owner has a duty to control the quality of goods sold under the trademark.

61.    Pure Nature has taken no action to supervise or control the quality of the goods sold by SGOI under the Mark.

62.    Because Pure Nature failed to preserve a right in the License Agreement to supervise and control the quality of SGOI's good sold under the Mark, and has taken no action to ensure the consistency of the goods, Pure Nature has forfeited any interest or right in the Mark.

63.    In the Product Supply Agreement, Pure Nature agreed not to compete with SGOI, assigned its customer relationships to SGOI, and ceased doing business or using the Mark.

64.    The term of the covenant not to compete in the Product Supply Agreement requires Pure Nature to not compete with SGOI for a period of six years.

65.    In the License Agreement, Pure Nature assigned all of its trademark rights and interests in the Mark to SGOI.

66.    Pure Nature has completely ceased and discontinued using the Mark.

67.    By agreeing not to compete with SGOI for a period of six years, Pure Nature has demonstrated its intent not to use the Mark for a period of at least six years.

68.    Pure Nature also demonstrated its intent to forever abandon the Mark by agreeing to sell the Mark to SGOI in the License Agreement.

69.    By not using the Mark, Pure Nature has abandoned any interest or right in the Mark.

### Pure Nature Breached the Product Supply Agreement

70.    In the alternative, if Pure Nature has been using the Mark and has not abandoned the Mark, then Pure Nature has breached its covenant not to compete with SGOI in the Product Supply Agreement.

### Pure Nature Is Infringing SGOI's Mark

71.    Pursuant to the express terms of the License Agreement, SGOI purchased all right, title and interest in the Mark from Pure Nature.

72.   If Pure Nature has not abandoned all use of the Mark and continues to use the Mark, then Pure Nature, in the alternative, is willfully infringing on SGOI's ownership interests in the Mark.

<b>Pure Nature Breached the License Agreement</b>

73.   Pure Nature breached its obligation under the License Agreement by failing to recognize SGOI's exercise of its option to purchase all right, title and interest in the Mark.

<b><u>COUNT I</u><br><u>Declaratory Judgment of Non-Infringement and</u><br><u>Ownership of the Mark by SGOI</u><br><u>(Against Pure Nature)</u></b>

74.   SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

75.   Pure Nature licensed all right, title and interest in its Mark to SGOI for a term of one year.

76.   Any use of the Mark by SGOI was with the consent and knowledge of Pure Nature.

77.   To the extent that Pure Nature argues that that license was limited, SGOI's use of the Mark was only for its business purposes and thus such use was permissible under the express terms of the License Agreement.

78.   Prior to the expiration of the one-year license, SGOI timely exercised its option to purchase the Mark from Pure Nature.

79.   SGOI now is the exclusive owner of all right, title and interest in the Mark.

80.   Because SGOI possesses exclusive right, title and interest in the Mark, SGOI is not infringing any purported interest that Pure Nature has in the Mark.

81.   An actual controversy exists between SGOI and Pure Nature and under 28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. § 1051 *et seq.*, this Court may declare the rights and liabilities of the parties and grant such further relief as is necessary and proper including, but not limited to, granting a declaration that SGOI owns all right, title and interest in the Mark, that SGOI's use

-17-

of the Mark was at all times permissible, and that SGOI has not infringed, diluted, or otherwise violated any claimed rights of Pure Nature in the Mark.

## COUNT II
### Declaratory Judgment of Abandonment of the Mark by Pure Nature
### (Against Pure Nature)

82.     SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

83.     Pure Nature granted SGOI a naked license that failed to retain any right to control or supervise the quality of goods sold by SGOI using the Mark.

84.     Pure Nature has not taken any action to supervise or control the quality of the goods sold by SGOI using the Mark.

85.     Pure Nature has abandoned the Mark by ceasing all use of the Mark.

86.     Pure Nature has demonstrated its intent to refrain from using the Mark for a period or at least six years.

87.     By agreeing to sell the Mark to SGOI, Pure Nature further demonstrated its intention to forever cease its use of the Mark.

88.     An actual controversy exists between SGOI and Pure Nature and under 28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. § 1051 *et seq.*, this Court may declare the rights and liabilities of the parties and grant such further relief as is necessary and proper including, but not limited to, granting a declaration that Pure Nature has abandoned all right, title and interest in the Mark and declaring that SGOI, through its fair use of the Mark pursuant to the License Agreement, and later purchase of the Mark, is the exclusive owner of all right, title and interest in the Mark.

## COUNT III
### Breach of the Product Supply Agreement
### (Against Pure Nature)

89.     SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

90.     In the Product Supply Agreement, Pure Nature agreed not to compete with SGOI for a period of six years.

91.    Pure Nature's use of the Mark would constitute competition with SGOI.

92.    To the extent that Pure Nature is using the Mark, then Pure Nature is in breach of its covenant not to compete with SGOI.

93.    Pure Nature's breach of the Product Supply Agreement has caused SGOI to suffer injury.

94.    SGOI is entitled to damages, interest, fees, costs and disbursements.

## COUNT IV
## Trademark Infringement, Lanham Act § 32, 15 U.S.C. § 1114
## (Against Pure Nature)

95.    SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

96.    SGOI is the owner of United States Trademark Registration No. 2,971,821 for the PURE NATURE ORGANIC FRUITS & VETEGABLES mark and design.

97.    SGOI acquired the exclusive right to use the Mark on or before August 4, 2008.

98.    SGOI acquired all title, right and interest in the Mark on or before August 4, 2009 pursuant to its exercise of its option to purchase the Mark under the License Agreement or pursuant to the Combined Agreements.

99.    SGOI's Mark is a valid and legally protectable mark in favor of SGOI.

100.   SGOI began using the Mark on or around August 4, 2008.

101.   Pure Nature should have ceased all use of the Mark prior to August 4, 2008.

102.   Pure Nature was formerly in the business of selling food products.

103.   Pure Nature lost customer confidence by failing to provide good quality products and as a result ceased selling food products.

104.   SGOI is in the business of selling food products.

105.   SGOI has good will in the marketplace and its products are seen as being of superior quality.

106.   To the extent that Pure Nature continues to sell food products, Pure Nature is a direct competitor to SGOI.

PortInd1-2561717.1 0049129-00007

107.    SGOI has expended considerable time, effort and expense to promote, advertise and popularize the Mark, as well as the products offered in connection with the Mark.   The Mark, in connection with SGOI's products, is well known and distinctive.   Accordingly, the public, and SGOI's customers, have come to know, rely upon, and recognize SGOI as the source of products bearing the Mark.   SGOI has established valuable goodwill in the Mark.

108.    To the extent that Pure Nature continues to use the Mark, Pure Nature is using the Mark with actual knowledge of SGOI's ownership of the Mark.

109.    Pure Nature's use of the Mark is with the intent to confuse and deceive consumers and to unjustly enrich Pure Nature at the expense of the public and SGOI.

110.    Pure Nature's use of the Mark is without license, approval, or consent of SGOI and, as a result, SGOI is unable to control the nature and quality of the products offered by Pure Nature.

111.    Pure Nature's use of the Mark is likely to cause confusion, cause mistake, and deceive as to the affiliation, connection or association of Pure Nature with SGOI as to the origin, sponsorship, or approval of Pure Nature's products by SGOI.

112.    Pure Nature's unauthorized use constitutes trademark infringement.

113.    Pure Nature's unlawful actions have caused, and will continue to cause, SGOI irreparable harm.

114.    Pure Nature has profited from its unlawful actions and has been unjustly enriched to the detriment of SGOI.   Pure Nature's unlawful actions have caused SGOI monetary damage.

115.    SGOI has been damaged by Pure Nature's unfair competition and is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

116.    Pursuant to 15 U.S.C. § 1117, SGOI is entitled to recover all of Pure Nature's profits, SGOI's damages, as well as the costs of this action.   The intentional nature of Pure Nature's unlawful acts renders this an "exceptional case," entitling SGOI to enhanced damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

-20-

## COUNT V
### Breach of the License Agreement
### (Against Pure Nature)

117.    SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

118.    In the License Agreement, Pure Nature agreed to sell all interest, right and title in the Mark to SGOI.

119.    Pure Nature promised that: "Upon the expiration of the Term, Licensee shall have the option to purchase for one dollar ($1.00) from Licensor all right, title, and interest in and to the Mark, free and clear of any infringement, lien, encumbrance, claim, pending or otherwise."

120.    The purchase option in the License Agreement is nugatory, such that all rights, title and interest in the Mark transferred to SGOI upon execution of the License Agreement.

121.    In the alternative, SGOI timely exercised its option to purchase the Mark.

122.    Pure Nature has refused to honor its promise to sell the Mark, and has breached the License Agreement.

123.    SGOI is entitled to specific performance and damages.

124.    SGOI is also entitled to recover prejudgment interest, attorney fees, costs and disbursements.

## COUNT VI
### Unjust Enrichment
### (Against Pure Nature)

125.    SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

126.    Pursuant to the terms of the Product Supply Agreement, Pure Nature received a benefit of $20,000 from SGOI by SGOI paying $20,000 to Pure Nature's creditor ExpoCredit.

127.    Also pursuant to the terms of the Product Supply Agreement, and in consideration for the grant of all rights and interests in the Mark under the License Agreement, Pure Nature agreed to obtain from ExpoCredit a release of ExpoCredit's security interest in the Mark.

128.    In the Release Agreement, in consideration for the $20,000 payment made by SGOI to ExpoCredit, for the benefit of SGOI, Pure Nature obtained a release to all right, title and interest in the Mark free of ExpoCredit's security interest.

129.    Pursuant to the Combined Agreements, Pure Nature was then expected to transfer all title, interest and right to the Mark to SGOI.

130.    Because SGOI paid $20,000 for the release of the security interest in all right, title and interest in the Mark, it would be unjust to allow Pure Nature to retain any benefit or interest in the Mark.

131.    To the extent that Pure Nature claims to possess any interest, title or right in the Mark, Pure Nature has been enriched in an amount equal to that sum he received under the terms of the Brokerage Agreement.

132.    It would be unjust and inequitable for Pure Nature to retain any benefit and value in the Mark for which SGOI paid valuable consideration and Pure Nature paid nothing.

133.    SGOI is entitled in equity to recover its full possession of all title, interest and rights in the Mark, or damages equivalent to the fair value of the full title, interest and rights in the Mark.

134.    SGOI is also entitled to recover prejudgment interest, attorney fees, costs and disbursements.

### COUNT VII
### Breach of the Brokerage Agreement
### (Against Marcus Meurs)

135.    SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

136.    Under the terms of the Brokerage Agreement, Marcus Meurs agreed to "diligently promote the sale of SGOI's products."

137.    Mr. Meurs also agreed to "faithfully serve and use his best efforts to promote the interests of SGOI."

-22-

PortInd1 2561717 1 0049129 00007

138.    By remaining as an officer and director of Pure Nature, whose interests have been made antagonistic to the interests of SGOI, Mr. Meurs has breached his promise to faithfully serve and use his best efforts to promote the sale of SGOI's products.

139.    By directing his company and alter ego Pure Nature to sue SGOI for trademark infringement and challenge the sales of SGOI's products, Mr. Meurs has breached his obligation to promote the sale of SGOI's products.

140.    SGOI is entitled to damages incurred as a result of Mr. Meurs's breaches of the Brokerage Agreement.

141.    SGOI is also entitled to all off-sets and charge backs owed to SGOI under the Brokerage Agreement in an amount to be determined at trial.

142.    In addition, SGOI is also entitled to recover prejudgment interest, attorney fees, costs and disbursements.

**COUNT VIII**
**Declaratory Judgment of Termination of the Brokerage Agreement**
**(Against Marcus Meurs)**

143.    SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

144.    The Brokerage Agreement provides that SGOI can terminate the Brokerage Agreement upon the material breach of any provision of the Brokerage Agreement.

145.    Under the terms of the Brokerage Agreement, Marcus Meurs agreed to "diligently promote the sale of SGOI's products."

146.    Mr. Meurs also agreed to "faithfully serve and use his best efforts to promote the interests of SGOI."

147.    Mr. Meurs has breached his obligations to diligently promote the sale of SGOI's products and his obligation to faithfully serve and use his best efforts to promote the interests of SGOI.

148.    The Brokerage Agreement also provides that the Brokerage Agreement can be terminated by SGOI upon "any act by Broker [Marcus Meurs] which materially impairs the good

PortInd1-2561717.1 0049129-00007

will associated with SGOI or its affiliates' trademarks, trade names, service marks, logotypes, or other commercial symbols."

149.   Mr. Meurs, by directing his company and alter ego Pure Nature to file trademark claims against SGOI, has violated his promise not to take any action to impair SGOI's trademark rights.

150.   Because Mr. Meurs has breached the terms of the Brokerage Agreement, SGOI is entitled to terminate the Brokerage Agreement.

151.   Mr. Meurs is entitled to no commissions or compensation under the Brokerage Agreement, and SGOI is entitled to all off-sets and charge backs as will be proven at trial.

152.   An actual controversy exists between SGOI and Mr. Meurs and under 28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. § 1051 *et seq.*, this Court may declare the rights and liabilities of the parties and grant such further relief as is necessary and proper including, but not limited to, granting a declaration that SGOI is entitled to terminate the Brokerage Agreement, that Mr. Meurs is not entitled to any commissions or other payment under the Brokerage Agreement, and that SGOI is entitled to offsets and charge backs under the Brokerage Agreement.

**COUNT IX**
**Tortious and Wrongful Interference with Contractual Relations**
**(Against Marcus Meurs)**

153.   SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

154.   SGOI has, or had, a business relationship with Pure Nature.

155.   Pure Nature has a contractual agreement to sell to SGOI all right, title and interest in the Mark to SGOI.

156.   SGOI had a reasonable expectation of economic advantage or benefit from its purchase of the Mark.

157.   Marcus Meurs knew of SGOI's reasonable expectation of economic benefit from the purchase of the Mark from Pure Nature and the contractual commitment of Pure Nature in the License Agreement to sell the Mark to SGOI.

158.   Mr. Meurs has acted to wrongfully and tortiously prevent Pure Nature from honoring its contractual commitment to sell the Mark to SGOI pursuant to the terms of the License Agreement.  Mr. Meurs has acted with an intent to stop or attempt to disrupt the sale of the Mark.

159.   As a result of Mr. Meurs's tortious and wrongful conduct, SGOI has suffered damages and an actual injury.  This has resulted in an irreparable injury to SGOI of which there is no adequate remedy at law.

160.   As a direct and proximate cause of Mr. Meurs's actions, SGOI has been damaged in an amount in excess of $75,000, the exact amount to be proven at trial.

**COUNT X**
**Unjust Enrichment**
**(Against Marcus Meurs)**

161.   SGOI incorporates by reference the allegations contained in the foregoing Paragraphs of the Counterclaims as if fully set forth herein.

162.   Marcus Meurs received payment from SGOI in the amount of $428,000 under the Brokerage Agreement.

163.   Mr. Meurs has been enriched in an amount equal to that sum he received under the terms of the Brokerage Agreement.

164.   It would be unjust and inequitable for Mr. Meurs to retain the benefit and value he received under the Brokerage Agreement without providing any benefit or value of SGOI in exchange for the payment.

165.   SGOI is entitled in equity to recover the $428,000 paid to Mr. Meurs.

166.   SGOI is also entitled to recover prejudgment interest, attorney fees, costs and disbursements.

**PRAYER FOR RELIEF**

**WHEREFORE**, SGOI respectfully requests that the Court:

Portlnd1 2561717 1 0049129 00007

1.      Adjudge and declare that SGOI has not infringed, diluted, or otherwise violated Pure Nature purported rights in the Mark or any other mark claimed by Pure Nature;

2.      Adjudge and declare that SGOI has exclusive ownership rights, interest and title to the Mark;

3.      Adjudge and declare that SGOI's use of the Mark was permissible in that Pure Nature consented to the use of the Mark and otherwise assigned all title, interest and rights to the Mark to SGOI;

4.      Adjudge and declare that Pure Nature abandoned the Mark by non-use of the Mark;

5.      Adjudge and declare that Pure Nature abandoned the Mark by making a naked license and failing to control the nature and quality of goods sold under the Mark;

6.      Adjudge and declare that SGOI is entitled to terminate the Brokerage Agreement.

7.      Adjudge and declare that SGOI is entitled to off sets and charge backs under the Brokerage Agreement and is not responsible to pay Mr. Meurs any commissions or other payments under the Brokerage Agreement.

8.      Award SGOI its actual damages in an amount to be proven at trial, which is believed to be in excess of $75,000;

9.      Award SGOI  its reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and under other State statutory and common law; and

10.     Award such other relief as the Court may deem just and equitable.

### JURY TRIAL DEMANDED

SGOI demands a trial by jury as to all issues triable by jury.

Dated:  October 2, 2009

_____ *for*   FBN 037438

Edward R. Nicklaus, Florida Bar No. 138399
*Email: edwardn@nicklauslaw.com*
Nicholas F. Van Valen, Florida Bar No. 0006701
*Email: nicholasv@nicklauslaw.com*
NICKLAUS & ASSOCIATES, P.A.
4651 Ponce de Leon Boulevard, Suite 200
Miami, Coral Gables, FL  33146
Telephone: 305-460-9888
Facsimile:  305-460-9889

**STOEL RIVES LLP**
Eric A. Bartsch (MN # 243723) (of counsel)
Marc A. Al (MN # 247923) (of counsel)
Troy J. Hutchinson (MN # 320420 ) (of counsel)
33 South Sixth Street, Suite 4200
Minneapolis, MN  55402
Telephone: 612-373-8800
Facsimile:  612-373-8881
eabartsch@stoel.com
maal@stoel.com
tjhutchinson@stoel.com

**ATTORNEYS FOR SUNOPTA GLOBAL
ORGANIC INGREDIENTS, INC.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via facsimile & U.S. mail to: Ian J. Kukoff, Esq., Blaxberg, Grayson & Kukoff, P.A., *Attorneys for Pure Nature Organics, LLC*, 25 S.E. 2nd Avenue, Suite 730, Miami, Florida 33131, on this ⟶2 day of October, 2009.

**NICKLAUS & ASSOCIATES, P.A.**
*Attorneys for Defendants*
4651 Ponce de Leon Blvd., Suite 200
Coral Gables, Florida 33146
Telephone: 305-460-9888
Facsimile:  305-460-9889

By: _____  FBN 657438
EDWARD R. NICKLAUS
Florida Bar No.: 138399

Portlnd1-2561717.1 0049129-00007