UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Pure Nature Organics, LLC,                                    Case No. 09-CIV-22978

      Plaintiff,

vs.

SunOpta Global Organic Ingredients, Inc.,
And Joseph J. Stern,

      Defendants.

_____/

SunOpta Global Organic Ingredients, Inc.,

      Counterclaimant,

vs.

Pure Nature Organics, LLC, and
Marcus Meurs,

      Counterdefendant.

_____/

**PURE NATURE ORGANICS LLC'S AND MARCUS MEURS'
MOTION TO DISMISS COUNTERCLAIM**

Plaintiff/Counter Defendant Pure Nature Organics, LLC ("Pure Nature") and Counter Defendant Marcus Meurs ("Meurs"), through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), file this, their Motion to Dismiss SunOpta Global Organic Ingredients, Inc.'s ("SunOpta") Counterclaims, and as grounds, asserts that SunOpta fails to state a cause of action upon which relief can be granted. As further grounds, Pure Nature and Meurs submit the following memorandum of law:

1

## PROCEDURAL HISTORY AND
## UNDISPUTED FACTS ESTABLISHED BY THE COUNTERCLAIM

Pure Nature sued SunOpta and Joseph J Stern for breach of a Trademark Licensing Agreement (the "Licensing Agreement"), for trademark infringement, and unfair competition in the state circuit court, Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The gravamen of Pure Nature's claims is that Pure Nature licensed its registered trademark "Pure Nature" (the "Mark") to SunOpta, restricting the Mark's use only in connection with the sale of frozen organic vegetables and fruits, but nonetheless SunOpta willfully breached the Licensing Agreement by using the Mark in its sale of fresh squeezed orange juice, a use not permitted by the Licensing Agreement, without Pure Nature's knowledge or authorization. Pure Nature alleges that SunOpta's breach entitled it to terminate the Licensing Agreement, and to damages based breach of contract, trademark infringement and unfair competition arising from SunOpta's unauthorized use of the Mark in connection with SunOpta's fresh squeezed orange juice business during the term of the Licensing Agreement, and for its continued use of the Mark after the Licensing Agreement was terminated.

On October 2, 2009, SunOpta filed a notice of removal of this action to the U.S. District Court claiming federal question and diversity jurisdiction. [D.E. 1]. On even date, SunOpta filed its Answer and Affirmative Defenses to Pure Nature's Complaint, and a Counterclaim against Pure Nature and Marcus Meurs, alleged in the Counterclaim to be the founder and chief executive of Pure Nature. [D.E. 2].

## FACTS ALLEGED IN THE COUNTERCLAIM

SunOpta's counterclaim against Pure Nature alleges that the Licensing Agreement is one of a series of agreements pursuant to which Pure Nature sold its business and customer relationships to SunOpta.  These other agreements include a Product Supply Agreement

(between SunOpta, Pure Nature, Dutch Food Company and Exportada Unifresh, S.A.), a Release Agreement (between Pure Nature and ExpoCredit Corporation), Brokerage Agreement (Meurs and SunOpta) and Escrow Agreement (signed by Meurs, Pure Nature SunOpta, Exportada, Dutch Company and Carlton Fields the escrow agent). Conspicuously absent from any of these other agreements is reference to the Licensing Agreement. The Licensing Agreement provides for a merger clause stating that "the agreement represents the entire agreement of the parties…"

SunOpta counterclaim does not dispute that its rights in the Mark derive from this Licensing Agreement. SunOpta also admits in its answer and counterclaim that it used the Mark in connection with the sale of its fresh squeezed orange juice business, but claims that it was justified in doing so because the Mark was being used as a part of its business. Whether the Mark was being used as part of SunOpta's overall business is not the issue, however. The express terms of the Licensing Agreement which defines the "Business" for which authorized use is permitted expressly limits use of the Mark to frozen organic vegetables and fruits. The Licensing Agreement referred to in the counterclaim[1] provides in pertinent part:

**Preliminary Statements:**

    A.    Licensor owns and uses the name and/or trademark "Pure Nature ORGANICS" (the "Mark") in connection with ***its business of selling frozen organic vegetables and fruits;***

---

[1] The Eleventh Circuit Court of Appeals' Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, see *In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. See *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. Here, SunOpta makes specific reference to the Licensing Agreement in the counterclaim, despite omitting a copy of it as an attachment to the Counterclaim. Pure Nature did attach a copy of the Licensing Agreement to its Complaint, and SunOpta has admitted its authenticity. [See ¶ 10 of SunOpta's Answer].

B.    Licensee, similar to Licensor, is in ***the business of selling frozen organic vegetables and fruits (the "Business")***;

C.    The Licensee desires to use the Mark in connection with its Business, and the Licensor desires to license the Marks to the Licensee pursuant to the terms and conditions of this Agreement.

### Agreement:

NOW THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1.    **License of Mark.**    Subject to the terms and conditions of this Agreement, the Licensor hereby grants to the Licensee, and Licensee hereby accepts, an exclusive license to use the Mark in an appropriate and tasteful manner, as determined in Licensee's sole discretion (i) ***solely in connection with the marketing and operation of the Business***, and (ii) solely during the term of this Agreement, subject to the provisions of Section 6.

2.    **Rights Reserved; Limited Rights to Licensee.** ***Licensor reserves all rights with respect to the Mark not expressly licensed to Licensee hereunder.  Licensee agrees that it will not utilize the Mark in any manner whatsoever other than in connection with the marketing and operation of the Business.*** [Emphasis supplied].

### SUNOPTA'S CLAIMS

SunOpta seeks a declaratory judgment that it did not infringe on Plaintiff's trademark (Count I), even though SunOpta admits in its pleadings that it used the Mark in a manner outside the scope of permissible uses under the Licensing Agreement. SunOpta also seeks a declaratory judgment that the license granted to SunOpta was a "naked license" and that Pure Nature abandoned the Mark (Count II), despite SunOpta's admission in its pleadings that its rights to the Mark originate from the Licensing Agreement.  As a matter of law, a licensee is estopped from claiming naked license or abandonment of the Mark.

4

SunOpta also sues Pure Nature for breach of the Product Supply Agreement (Count III) based on an alleged hypothetical violation of the agreement's non-compete clause "to the extent Pure Nature is using the Mark…;" for trademark infringement (Count IV), again based on an alleged hypothetical violation of the non-compete clause "to the extent Pure Nature is using the Mark….;" and for unjust enrichment seeking damages arising under Product Supply Agreement (Count VI).

SunOpta has joined Meurs, Pure Nature's founder and president, as a counter-defendant, and alleges that Meurs is an alter ego of Pure Nature. The counterclaim asserts, among other claims, tortious interference with the Licensing Agreement (Count IX), despite SunOpta's allegation that Meurs is a party to the Licensing Agreement; and unjust enrichment for damages arising from a breach of the Brokerage Agreement.

For the reasons, and based on the arguments set forth below, Pure Nature and Meurs submit that SunOpta fails to state a cause of action, and seeks dismissal of Counts I, II, III, IV, VI, IX and X of the counterclaim.

## STANDARD OF REVIEW

The district court may only grant a Rule 12(b)(6) motion to dismiss where it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985), a court may nonetheless dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

<u>**LEGAL ARGUMENT IN SUPPORT OF DISMISSAL**</u>

1. <u>**Count I against Pure Nature for Declaratory Judgment of non-infringement should be dismissed because the clear and unambiguous language of the Licensing Agreement establishes that SunOpta's admitted use exceeded the scope of the license.**</u>

SunOpta seeks a declaratory judgment that it did not infringe on Plaintiff's trademark, alleging that "[a]ny use of the Mark by SGOI was with the consent and knowledge of Pure Nature," and "SGOI's use of the Mark was only for its business purposes and thus such use was permissible under the express terms of the License Agreement." [See ¶¶ 76 and 77 of the Counterclaim]. These allegations are contrary to the clear and unambiguous language of the parties' Licensing Agreement attached hereto as Exhibit "A", which limits the use of the Mark to use only in connection with the "Business" as that term is defined in the Licensing Agreement. *The term "Business" is expressly defined in the Licensing Agreement as "the business of selling frozen organic vegetables and fruits."* [See Licensing Agreement's Preliminary Statement ¶ B.]. The Licensing Agreement provides in pertinent part:

<u>**Preliminary Statements:**</u>

A.    Licensor owns and uses the name and/or trademark "Pure Nature ORGANICS" (the "Mark") in connection with *its business of selling frozen organic vegetables and fruits;*

B.    *Licensee, similar to Licensor, is in the business of selling frozen organic vegetables and fruits (the "Business")*;

C.    The Licensee desires to use the Mark in connection with its Business, and the Licensor desires to license the Marks to the Licensee pursuant to the terms and conditions of this Agreement.

<u>**Agreement:**</u>

NOW THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1. **License of Mark.**    Subject to the terms and conditions of this Agreement, the Licensor hereby grants to the Licensee, and Licensee hereby accepts, an exclusive license to use the Mark in an appropriate and tasteful manner, as determined in Licensee's sole discretion (i) *solely in connection with the marketing and operation of the Business*, and (ii) solely during the term of this Agreement, subject to the provisions of Section 6.

2. **Rights Reserved; Limited Rights to Licensee.** *Licensor reserves all rights with respect to the Mark not expressly licensed to Licensee hereunder. Licensee agrees that it will not utilize the Mark in any manner whatsoever other than in connection with the marketing and operation of the Business.* [Emphasis supplied].

Although SunOpta may be in the business of selling fresh squeezed pasteurized orange juice and other produce products, no where in the Licensing Agreement does Plaintiff permit SunOpta to use the Mark in connection with the sale of fruit juices. While SunOpta asks this Court to rewrite the parties' agreement to expand the permissible use under the Licensing Agreement to any of its business activities to claim ownership of the Mark despite SunOpta's breach, the Licensing Agreement clearly *limits the use to only frozen vegetables and fruits*, and the Court is not at liberty to rewrite the parties' agreement. It is well settled that "when the terms of a voluntary contract are clear and unambiguous ... the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Ernie Haire Ford, Inc. v. Ford Motor Co.* 260 F.3d 1285,*1291 (11th Cir. 2001), citing *Emergency Assocs. of Tampa, P.A. v. Sassano,* 664 So.2d 1000, 1003 (Fla. 2d DCA 1995); *accord Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc.,* 609 So.2d 66, 68 (Fla. 4th DCA 1992); *Nat'l Health Labs., Inc. v. Bailmar, Inc.,* 444 So.2d 1078, 1080 (Fla. 3d DCA 1984).

Here, the Agreement is clear and unambiguous, and the contractual language controls; any subjective unexpressed intent of one of the parties is ineffective. *Sterling Winchester &*

*Long, LLC v. U.S.* 83 Fed. Cl. 179 (Fed. Cl. 2008); *See also Bunn-O-Matic Corporation vs. Bunn Coffee Service, Inc.* 88 F. Supp. 2d 914 (C.D. Ill. 2000) (Licensee argued that the license was silent on a particular use of BUNN or BUNN-1 and was therefore permitted; Court held "[t]hat is no answer. The License is a limited grant of authority to use the trademark in a defined way. Another use is not authorized by the grant and is a breach."). The Licensing Agreement, which is central to both parties' claim, and whose authenticity is not in dispute, ***explicitly limited SunOpta's use to frozen vegetables and fruits*** and reserved unto Plaintiff all rights to the Mark not expressly licensed during the term of the Licensing Agreement. The allegations in the Complaint on which SunOpta bases its claim for declaratory relief are contrary to and in conflict with the Licensing Agreement attached to the Complaint. Where as here there is a "conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed.R.Civ.P., the exhibit prevails." *International Star Registry of Illinois v. Omnipoint Marketing, LLC,* 510 F.Supp.2d 1015 (S.D. Fla. 2007).

Further, SunOpta, by its own admission in its Answer to the Complaint, violated the Licensing Agreement by using the Mark in connection with the marketing and sale of its fresh squeezed orange juice during the term of the license, and after it received notice of the termination of the parties' agreement [see ¶¶ 15, 16, 17 and 18 of SunOpta's Answer], a use clearly outside the scope of permissible uses under the Licensing Agreement. SunOpta's admitted breach gave Pure Nature the right to terminate an otherwise irrevocable license. *See Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F. Supp. 2d 914 (C.D. Ill. 2000) (licensee's breach gives licensor the right to terminate an otherwise irrevocable license agreement). Having properly terminated the licensing agreement, SunOpta cannot claim ownership of the Mark, and its claim for declaratory relief must be dismissed.

**2.  Count II against Pure Nature for Declaratory Judgment of Abandonment should be dismissed because SunOpta is estopped from raising abandonment and naked licenses as a matter of law.**

SunOpta also seeks judgment for a declaration that Pure Nature granted SunOpta a naked license and abandoned the Mark. It is well settled that, as a matter of law, a licensee is estopped from claiming any rights against the licensor which are inconsistent with the terms of the license or from challenging the licensor's mark based upon facts which arose during the term of the license. P*rofessional Golfers Ass'n of Am. v. Bankers Life & Casualty Co.*, 514 F.2d 665, 671 (5th Cir.(Fla.)1975); *Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.*, 318 F.2d 894 (9th Cir. 1963). *Heaton Distributing Co. v. Union Tank Car Co*., 387 F.2d 477, 482, (8th Cir. 1967) (even in the absence of an express estoppel clause in the license agreement). *Seven-Up Bottling Co. v. Seven-Up Co*., 420 F. Supp. 1246, (E.D. Mo. 1976), *judgment aff'd,* 561 F.2d 1275 (8th Cir. 1977) (ex-licensees estopped from contesting validity of licensor's collective mark). *Westco Group, Inc. v. K.B. & Associates, Inc.,* 128 F. Supp. 2d 1082 (N.D. Ohio 2001) (licensee estopped from arguing that licensor does not own licensed trade name).

"The basis for this rule is that a licensee who freely enters into a license and pays royalties or agrees to the limitations imposed by a licensor effectively recognizes that the licensor possesses a valid trademark." *Chrysler Motors Corp. v. Ally Automotive Co., Inc.,* 661 F.Supp. 191, 192-92 (N.D.Ill.1987) (*citing Smith,* 140 F.2d at 148). "The majority of courts ... have found that the doctrine of licensee estoppel bars a licensee from asserting a naked licensing defense." *Westco Group,* 128 F.Supp.2d at 1089 (*citing Creative Gifts, Inc. v. UFO,* 235 F.3d 540, 547-48 (10th Cir.2000)); *see also Big Boy Restaurants v. Cadillac Coffee Co.,* 238 F.Supp.2d 866, 873-74 (E.D.Mich.2002); *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,* 88 F.Supp.2d 914, 927 (C.D.Ill.2000); *STX, Inc. v. Bauer USA, Inc.,* 1997 WL 337578, at *11

(N.D.Cal. June 5, 1997). "The leading commentators have likewise found the doctrine of licensee estoppel applicable to naked licensing claims." *Id.*

In *Professional Golfers Ass'n of Am., supra,* the Fifth Circuit faced a similar claim from a former licensee that the owner of the trademark abandoned the mark by naked licensing, based on the failure to properly supervise its licensee's use of the mark. The Court rejected this argument, holding:

> Having determined that Bankers' activities bear all the earmarks of trademark infringement, we have only to discuss appellant's remaining alternative theory: that the PGA abandoned its mark through "naked licensing", or the failure to properly supervise its licensee's use of the mark. We note, first, that *a licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement. Heaton Distributing Co. v. Union Tank Car Co., supra; Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co.,* 343 F.2d 655 (7th Cir. 1965); *Pacific Supply Coop v. Farmers Union Central Exchange, Inc.,* 318 F.2d 894 (9th Cir. 1963); *E. F. Prichard Co. v. Consumers Brewing Co.,* 136 F.2d 512 (6th Cir. 1943). *The licensee has, by virtue of the agreement, recognized the holder's ownership.* Yet once the license has terminated, the question remains whether the former licensee is forever barred from challenging the holder's valid ownership. Some courts have held that the estoppel expires with the license. *Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., supra*; *Bucky v. Sebo,* 208 F.2d 304 (2d Cir. 1953); *Eskimo Pie Corp. v. National Ice Cream Co.,* 26 F.2d 901 (6th Cir. 1928); *Amiesite Asphalt Co. v. Interstate Amiesite Co.,* 4 F.Supp. 504 (D.Del.1933). Others have refused to allow any subsequent challenges by former licensees. *Heaton Distributing Co. v. Union Tank Car Co., supra; E. F. Prichard Co. v. Consumers Brewing Co., supra.* We, however, under the facts and in the circumstances here presented, adopt an intermediate view, that suggested by treatise author Rudolf Callman: after expiration of the license, a former trademark licensee may challenge the licensor's title on facts which arose after the contract has expired. Callman, supra at 454; *Medd v. Boyd Wagner,* 132 F.Supp. 399 (N.D.Ohio 1955). Thus a licensee affirms his licensor's ownership of the mark by entering into the agreement, but the straightjacket effect does not last interminably. *In the present case, however, the facts upon which Bankers relies arose during the course of its ten-year agreement with the PGA, so it is estopped to argue abandonment.* [Emphasis supplied].

*Id.* at 671.

In *STX, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q.2d (BNA) 1492, 1500–1501, 1997 WL 337578 (N.D. Cal. 1997), the Northern District of California similarly held that the doctrine of licensee estoppel precludes a licensee from raising abandonment based on facts that arose during the term of the licensing agreement. In *STX, Inc.* the licensee made the identical claim that SunOpta makes – that the parties' licensing agreement did not contain any explicit quality control provisions and that the trademark owner failed to supervise the quality of its licensed goods. The *STX, Inc.* court also rejected the abandonment defense based on naked license, finding that:

> Because the facts alleged by defendant in support of its lack of quality control argument occurred mostly, if not exclusively, during the course of the STX/Bauer licensing agreement, defendant is estopped from challenging abandonment because of uncontrolled licensing.

*Id*. At *11

SunOpta's allegations in Count II of the counterclaim relate solely to the terms of the license and to facts arising exclusively during the term of the Licensing Agreement. Count II's allegations do not distinguish between pre and post termination activity. Indeed, the allegations cannot relate to any post termination activity, since the term of the Licensing Agreement just expired on August 4, 2009 and prior to expiration, it is undisputed that Pure Nature asserted its right to terminate the Licensing Agreement and to reclaim its Mark. Count II of the Counterclaim seeking declaratory relief based on abandonment and naked license fails to state a cause of action and must be dismissed.

**3.** **Count III against Pure Nature fails to state a cause of action for breach of the Product Supply Agreement – the Product Supply Agreement does not proscribe all competition, and the Counterclaim fails to definitively allege any action by Pure Nature that breaches the Agreement.**

SunOpta purports to allege a breach of the Product Supply Agreement attached hereto as Exhibit "B," based solely on a claim that *if* Pure Nature is using the Mark it is violating the non-compete provisions of the Product Supply Agreement. SunOpta makes no specific or definitive allegation of a breach of the non-compete based on use of the Mark or otherwise – the basis of the claim is purely speculative and hypothetical, and merely asserts that *if* Pure Nature is using the Mark it is a violation of the non-compete.

This claim is devoid of any specific factual allegation to support a claim of breach of the Product Supply Agreement. The counterclaim does not point to a single specific violation on which a breach can be alleged. SunOpta's counterclaim suggests that the Product Supply Agreement prohibits all competition for six (6) years, but this assertion is belied by the clear and unambiguous language of the Product Supply Agreement pursuant to which the non-compete is limited to competition *only involving SunOpta's customers, suppliers and products*:

> 3.     Non-Competition. Pure Nature and Dutch Food Company further agree for a period of six (6) years, either directly or indirectly, not to compete or otherwise solicit, contact or interfere in any manner *with SGOI's customers, suppliers or products* in China, El Salvador, Guatemala, Honduras, Mexico and the United States. [Emphasis supplied].

There is nothing in the Agreement that proscribes Pure Nature from doing business with (a) wholesalers or retailers who are not customers of SunOpta; (b) suppliers who are not suppliers of SunOpta; or (c) products that are not products of SunOpta, including fresh non-frozen organic produce and juices.

This Court has recognized that because Article III of the United States Constitution limits the federal courts to determining only "cases" and "controversies," standing to sue is an essential requirement for the prosecution of any federal action. *See Freeman v. Medical Protective Co. of Fort Wayne, Indiana,* 2008 WL 2965168, *2 (S.D. Fla. August 1, 2008); U.S. Const. Art. III, sec. 2, cl. 1. To satisfy this threshold requirement, a plaintiff must show: (1) that he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and, (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff's burden to show all three elements is an "irreducible constitutional minimum," and failure to show any one results in a failure to show standing. *Lujan,* 504 U.S. at 560. It is clearly established that "[a]llegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (internal quotations omitted).

Here, SunOpta claims a breach of the non-compete without specifying a single instance of past or even present violative conduct. The speculative and hypothetical nature of the allegation ***"to the extent that Pure Nature is using the Mark,"*** cannot support a claim of breach of the Product Supply Agreement, particularly where, as here, the claim is based solely on a purported breach of a non-compete that does not prohibit all competition. Accordingly, SunOpta's claim for breach of the Product Supply Agreement should also be dismissed.

**4.** <u>**Count IV against Pure Nature must be dismissed because SunOpta fails to state a**</u>
<u>**cause of action for trademark infringement.**</u>

15 USC § 1114(a) provides in pertinent part:

> Any person who shall, without the consent of the registrant, ***use in***
> ***commerce*** any reproduction, counterfeit, copy, or colorable
> imitation of a registered mark in connection with the sale, offering
> for sale, distribution, or advertising of any goods or services on or
> in connection with which such use is likely to cause confusion, or
> to cause mistake, or to deceive ... shall be liable in a civil action by
> the registrant for the remedies hereinafter provided. [Emphasis
> supplied].

To prevail on trademark infringement claim, the trademark registrant must demonstrate
that its mark ***was used*** in commerce by defendant without registrant's consent, and that this
unauthorized use was likely to cause confusion or mistake, or to deceive. *Breakers of Palm*
*Beach, Inc. v. International Beach Hotel Development, Inc.*, 824 F.Supp. 1576 (S.D. Fla. 1993).
Here again, SunOpta relies on speculative hypothetical allegations, to wit, "[t]o the extent that
Pure Nature continues to use the Mark …" [¶¶ 106 and 108 of the Counterclaim], and makes no
definitive statement, or reference to a specific instance of Pure Nature's use of the Mark since
August 2008. To have standing, the claimant must allege action that causes injury in fact that is
not conjectural or hypothetical. *Freeman* supra. at *2. SunOpta's trademark infringement claim
fails to, and indeed cannot, allege an essential element – use in commerce, and as such, Count IV
must be dismissed.

A license is a limited grant of authority to use the trademark in a defined way. Another
use is not authorized by the grant and is a breach. Again, SunOpta admitted in its Answer that
during the term of the Licensing Agreement it used the Mark in the marketing and sale of its
fresh squeezed orange juice, a use that was not authorized by the clear and unambiguous terms of
the Licensing Agreement. SunOpta also admits that it received notice of termination of the

License before the expiration of the term of the license based upon its breach. As such, SunOpta's cannot now claim to own the Mark or claim an infringement.

Finally, Count V of the counterclaim alleging breach of the License Agreement cannot be reconciled with the claim of ownership of the Mark alleged in Count IV for infringement. In ¶ 122 of the counterclaim SunOpta alleges that "Pure Nature has refused to honor its promise to sell the Mark…" as the basis for a breach of the Licensing Agreement. How can SunOpta claim ownership of the Mark when it admits that its rights in the Mark originate from the Licensing Agreement [¶¶ 22 – 24 and 26 – 27 of the Counterclaim], and that Pure Nature has not sold it the Mark? SunOpta's claims are contradictory and as such SunOpta cannot claim an infringement of the Mark. Count IV for infringement must therefore be dismissed.

**5. Count VI against Pure Nature for Unjust Enrichment against Pure Nature must be dismissed because (a) there is an express contract between the parties, (b) transfer of the Mark is not part of the consideration under the Product Supply Agreement, and (c) SunOpta's own allegations establish that Pure Nature has not been unjustly enriched as a matter of law.**

An unjust enrichment claim sounds in contract and is therefore subject to Florida law. Under Florida law, "[t]he elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Nautica Int'l, Inc. v. Intermarine USA, LP.,* 5 F.Supp.2d 1333, 1341-42 (S.D.Fla.1998). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Id.* It follows that a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract. *Anthony Distributors, Inc. v. Miller Brewing*

*Co.*, 904 F.Supp. 1363, 1368 (M.D.Fla.1995) (dismissing unjust enrichment claim where damages sought were not distinct from damages from alleged breach of contract).

This Court has held that a plaintiff fails to state a cause of action for unjust enrichment where, as here, the basis of the Plaintiff's unjust enrichment claim is also the basis of the Plaintiffs breach of express contract claim. *David v. American Suzuki Motor Corp.* 629 F.Supp.2d 1309 (S.D. Fla. 2009)(Judge Gold). In *David*, the plaintiff sued a motorcycle manufacturer for unjust enrichment and for breach of express warranty. Judge Gold dismissed the unjust enrichment count, finding that the damages alleged were covered by the express warranty and provided an adequate remedy at law:

> Here, Plaintiff has failed to plead adequately unjust enrichment. The basis of Plaintiff's unjust enrichment claim is the alleged defect in the frame of the motorcycle, which is also the basis of Plaintiffs breach of express warranty claim. The unjust enrichment claim arises out of Defendants' alleged failure to perform under the warranty, and the damages pled under unjust enrichment are not distinct from those pled under express warranty. Therefore, without determining whether Defendants have breached the express warranty, I conclude that Plaintiff has available a contractual remedy through the breach of express warranty claim. Critically, Plaintiff fails to allege that this contractual remedy is inadequate, as required to state a claim for unjust enrichment. See *Nautica Int'l, Inc.,* 5 F.Supp.2d at 1342 (dismissing unjust enrichment claim because the plaintiff failed to allege that an adequate remedy at law does not exist); *Kraft Co., Inc. v. J & H Marsh & McLennan of Florida, Inc.,* No. 04-2359-CIV, 2006 WL 1876995, at *3 (M.D.Fla.2006) (dismissing unjust enrichment claim because claim arose out of performance of an express contract, and express contract provides legal remedy); cf. *Wilson v. De Angelis,* 156 F.Supp.2d 1335, 1341 (S.D.Fla.2001) (denying motion to dismiss unjust enrichment claim because plaintiff alleged "no adequate legal remedy exists to compensate Plaintiff."). I therefore dismiss Plaintiff's unjust enrichment claim.

*Id.* at *1325.

In the instant case SunOpta merely seeks damages of $20,000.00 paid in accordance with the parties' Product Supply Agreement.   As in *David*, SunOpta has alleged a breach of the Product Supply Agreement, and entitlement to damages [¶ 133 of the counterclaim]. Also as in *David*, SunOpta has failed to allege that its legal remedy is inadequate, and therefore fails to state a claim. Judge King has similarly held that a claim for unjust enrichment must fail upon the showing of an express contract. *Validsa, Inc. v. PDVSA Services Inc*. 632 F.Supp.2d 1219 (S.D. Fla. 2009)**;** *see also Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.,* 982 F.Supp. 873, 880 (S.D.Fla.1997).

SunOpta may attempt to assert that it is pleading unjust enrichment in the alternative, but this argument must be rejected.   Pure Nature does not dispute the existence of the Product Supply Agreement or any of the other express agreements at issue. This fact deals a fatal blow to SunOpta's unjust enrichment claims. While a party can plead breach of contract and unjust enrichment in the alternative, a party is nonetheless precluded from pleading unjust enrichment where, as here, the existence of an express contract is not in doubt. *Validsa, Inc.* at 1243-44. Accordingly, Count VI for unjust enrichment should be dismissed.

In any event, the facts alleged by SunOpta's do not support a claim for unjust enrichment First, nowhere in the Product Supply Agreement does Pure Nature agree to transfer the Mark to SunOpta. As there is no obligation to transfer the Mark under the Product Supply Agreement, the failure to do so cannot constitute unjust enrichment under that contract. More importantly, it defies logic that SunOpta can claim unjust enrichment based on the payment of a mere $20,000 when under the Product Supply Agreement, SunOpta admits that it received, among other things, all of Pure Nature's intangible assets associated with Pure Nature's customer relationships [¶ 41

of the counterclaim] including an assignment of Pure Nature's customer relationship with Costco USA and Costco Mexico [¶¶ 42, 43 of the counterclaim], worth tens of millions of dollars.

6. **Count IX for Tortious Interference against Meurs for Tortious Interference must be dismissed for failure to state a cause of action because tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party.**

Throughout the counterclaim, SunOpta claims that Meurs is the "alter ego" of his company Pure Nature. This allegation is incorporated by reference into Count IX of the counterclaim. While Pure Nature denies this allegation, assuming for purposes of this motion to dismiss that this allegation is true, this would make Meurs a party to the Licensing Agreement. Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. *Genet Co. v. Annheuser-Busch, Inc.*, 498 So.2d 683, 684 (Fla. 3d DCA 1986) (citing *Ethyl v. Balter*, 386 So.2d 1220, 1225 (Fla. 3d DCA 1980)). In other words, "the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999) (citing *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. 1st DCA 1992)).

SunOpta may argue that a party's privilege to interfere is qualified and does not apply where a party purposefully interferes or acts egregiously. *See Making Ends Meet, Inc. v. Cusick*, 719 So.2d 926, 928 (Fla. 3d DCA 1998) (citing *McCurdy v. Collis*, 508 So.2d 380, 384 (Fla. 1st DCA 1987); *Nizzo v. Amoco Oil Co*., 333 So.2d 491, 493 (Fla. 3d DCA 1976)). This very same argument was rejected by the Eleventh Circuit Court of Appeals in *Ernie Haire Ford, Inc. v. Ford Motor Company*, 260 F. 3d 1285 (11th Cir. 2001), which holds that "[t]he privilege is qualified only where malice is the sole basis for the interference." *Id.* at 1294, fn. 9; *see also McCurdy*, 508 So.2d at 383-84. "In other words, the party must be interfering solely out of spite,

to do harm, or for some other bad motive. *See Id.; see also McCurdy at 383 n. 2; Nizzo*, 333 So.2d at 493 (upholding tortious interference claim where sole basis for defendant's interference was plaintiff's race). Here, Meurs as the chief officer of Pure Nature would clearly be justified in protecting his company's interest in its valuable Mark, particularly where SunOpta used the Mark in an unauthorized manner in breach of the parties' Licensing Agreement. SunOpta has failed to allege that Meurs' sole basis for directing Pure Nature not to sell the Mark was malicious, or even that the alleged interference was unjustified.

Nor has SunOpta alleged that Meurs used improper or egregious means to interfere with the Licensing Agreement – the counterclaim merely alleges that Meurs directed his own company not to sell the Mark to SunOpta. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004)(concluding that even where the defendant's motive was not purely malicious, a tortious interference claim might succeed if improper means were used; "[t]he significant inquiry to determine the privilege of justification is whether the means employed are not improper."). It is well settled that "so long as improper means are not employed, activities taken to safeguard or promote one's own financial and contractual interests are entirely non-actionable." *See Ethyl v. Balter*, 386 So.2d at 1225.

For the foregoing reasons, Count IX for tortious interference against Meurs fails to state a cause of action and must be dismissed as well.

**7. Count X for Unjust Enrichment against Meurs must be dismissed because (a) there is an express contract between the parties, and (b) the Brokerage Agreement itself establishes that Pure Nature has not been unjustly enriched.**

SunOpta again impermissibly seeks to recover damages for unjust enrichment against Meurs based on an alleged breach of an express contract – the Brokerage Agreement, a copy of which is attached as Exhibit "C." Again, a cause of action for unjust enrichment cannot lie

where, as here, the basis of Plaintiff's unjust enrichment claim is also the basis of Plaintiffs breach of express contract claim. *David v. American Suzuki Motor Corp.* 629 F.Supp.2d 1309 (S.D. Fla. 2009)(Judge Gold).

Again, SunOpta is seeking damages of $428,000, the nonrefundable advance commission paid under the Brokerage Agreement.   As in *David*, SunOpta has alleged a breach of the Brokerage Agreement (Count VII of the counterclaim), and entitlement to damages [¶ 140 of the counterclaim]. Also as in *David*, SunOpta has failed to allege that its legal remedy is inadequate, and therefore fails to state a claim. Again, Judge King has similarly held that a claim for unjust enrichment must fail upon the showing of an express contract. *Validsa, Inc. v. PDVSA Services Inc*. 632 F.Supp.2d 1219 (S.D. Fla. 2009)**;** *see also Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.,* 982 F.Supp. 873, 880 (S.D.Fla.1997).

Pure Nature does not dispute the existence of the Brokerage Agreement or any of the other express agreements at issue, which deals a fatal blow to SunOpta's unjust enrichment claims. While a party can plead breach of contract and unjust enrichment in the alternative, a party is nonetheless precluded from pleading unjust enrichment where, as here, the existence of an express contract is not in doubt. *Validsa, Inc.* at 1243-44. Accordingly, Count X for unjust enrichment against Meurs should be dismissed.

In any event, the facts alleged by SunOpta's do not support a claim for unjust enrichment The Brokerage Agreement provides that the $428,000 SunOpta claims unjustly enriched Meurs was a non-refundable advance commission, and SunOpta acknowledged receipt of reciprocal consideration  for this payment: admits that it received, among other things, all of Pure Nature's intangible assets associated with Pure Nature's customer relationships [¶ 41 of the counterclaim]

including an assignment of Pure Nature's customer relationship with Costco USA and Costco Mexico [¶¶ 42, 43 of the counterclaim], worth tens of millions of dollars.

**8.   <u>The entire counterclaim should be stricken as an impermissible shotgun pleading</u>**.

The counterclaim is subject to dismissal as it violates the pleading requirements in Fed. R. Civ. P. 10(b). The initial paragraph of each and every count of the counterclaim "incorporates by reference all of the allegations contained in the foregoing paragraphs of the counterclaim," including legal theories, regardless of whether those facts or legal theories relate to the claims alleged against Pure Nature or Meurs. This incorporation method of pleading is clearly improper. *See Merrill Lynch Business Financial Services, Inc. v. Performance Machine* 2005 WL 975773 (S.D. Fla. March 4, 2005); *see also Whitney Info. Network, Inc. v. Gagnon*, No. 2:03-CV-677, 2005 WL 91258 (M.D.Fla. Jan.14, 2005) (counterclaim that incorporated all allegations of each count in every successive count, as well as all paragraphs in the answer and affirmative defenses, was subject to dismissal as "shotgun" pleading).

"The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts ( i.e. all but the first) contain irrelevant factual allegations and conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir.2002); *see also Rodriguez v. City of Claremont,* 2009 WL 395737 (M.D. Fla. February 17, 2009). SunOpta's counterclaim falls squarely in this definition. In each of the ten counts, SunOpta realleges all prior allegations and paragraphs, including the legal theories set forth in the previous counts. SunOpta's counterclaim should be dismissed, and it should be required to properly re-plead its claims. *Id.*

## CONCLUSION

WHEREFORE, Pure Nature and Meurs respectfully request that Count I, II, III, IV, VI, IX and X be dismissed with prejudice, that the entire counterclaim be dismissed as a shotgun pleading, that the Court grant attorney's fees and costs, and that the Court grant all other relief it deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via facsimile and U.S. mail to Edward R. Nicklaus, Esq., Nicklaus & Associates, P.A., 4651 Ponce de Leon Boulevard, Suite 200, Coral Gables, Florida 33146 (305) 460-9889 and Troy J. Hutchinson, Esq., Stoel Rives, LLP, 33 South 6th Street, Suite 4200, Minneapolis, Minnesota 55402 (612) 373-8881 on this 12th day of November, 2009.

BLAXBERG, GRAYSON & KUKOFF, P.A.
Attorneys for Pure Nature Oranics, LLC
25 Southeast Second Avenue #730
Miami, FL 33131
Telephone (305) 381-7979

By: ____/s/ Ian J. Kukoff_____
        Ian J. Kukoff, Esq.
        Florida Bar No.: 827126